**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | **Civil Action No. 19-cv-05957** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Hon. John Z. Lee** |
| **NORTHRIDGE HOLDINGS, LTD., ET AL.,** | ) ) | |
| **Defendants.** | ) ) ) | **Magistrate Judge Susan E. Cox** |

**RECEIVER'S REPORT FOR THE PERIOD OF**
**OCTOBER 1, 2021 THROUGH DECEMBER 31, 2021**

N. Neville Reid, not individually, but solely as the Court-appointed receiver (the "Receiver") for the Estate of Defendant Northridge Holdings, Ltd. ("Northridge") and its related entities and affiliates as more particularly set forth in the Receivership Order (as defined herein) (collectively, the "Receivership Defendants" or "Receivership Entities," and their assets as more particularly identified therein, the "Receivership Assets," and such estate, the "Receivership Estate" or the "Estate", and such administration, the "Receivership"), and pursuant to the requirements of the *Order Appointing Receiver* entered by the Court on September 12, 2019 [Dkt. 22] and as amended by the Court on February 13, 2020 [Dkt. 18; see also Dkt. 102] (the "Receivership Order"),[1] respectfully submits this *Receiver's Ninth Report* (the "Report") *for the Period of October 1, 2021 through December 31, 2021* (the "Ninth Reporting Period"). The purpose of this Report is to provide the Court and all interested parties with a description of the nature of the Receiver's activities during the Ninth Reporting Period.

---

[1] Capitalized terms not defined herein shall be given the same meaning ascribed to such terms in the Receivership Order.

## I.    EIGHTH AMENDED LIQUIDATION PLAN.

1.      Pursuant to the Receivership Order, the Receiver attaches his Eighth Amended Liquidation Plan as **Exhibit A** hereto (the "Eighth Amended Liquidation Plan"). [Receivership Order at ¶ 59.] The Eighth Amended Liquidation Plan provides a summary of real property sales and an update on the Receiver's efforts to identify, pursue and settle potential litigation claims, including third-party receivable claims, "finder" claims, "net winner" claims and insider claims. Accordingly, such information is not repeated in the body of this Report.

## II.   REAL PROPERTY ASSETS

### a.  Management of Real Property Assets Generally.

2.      In prior reporting periods, as set forth in prior Receiver Reports, all the Receivership Estate's substantial Real Property Assets were sold. With the assistance of 33 Realty LLC ("33 Realty"), during the Ninth Reporting Period, the Receiver has satisfied his duty to manage the Receivership's remaining real property assets (the "Real Property Assets") and perform required post-sale "clean up" work, including but not limited to the following: (a) collecting/paying pro-rated rents and real property taxes; (b) paying operational expenses; (c) transferring accounts and closing accounts (e.g., electric and gas); and (d) finalizing all of the accounting associated with the sold properties, turning over a related association and assisting with tax returns related to the same.

3.      Matters specific to each of the Real Property Assets are as follows:

### b.  Sales Closed

4.      As set forth in the Eighth Amended Liquidation Plan, the following real properties were sold and closed in prior reporting periods:

- The **Chablis Property** sale closed on September 20, 2019, and the Estate received (a) **$3,882,611** in net proceeds from that sale; and (b) **$82,000.00** in escrow return post-

2

closing;

- The **Palatine Property** sale closed on February 10, 2020, and the Estate received **$129,420.28** in net proceeds from that sale;

- The **Bartlett Lake Property** sale closed on June 24, 2020, and the Estate received (a) **$7,810,079.26** in net proceeds from that sale; (b) **$230,029.20** in escrow return post-closing; and (c) approximately **$34,000.00** for post-closing rental collections and pro-rations;

- The **Surrey Property** sale closed on July 24, 2020, and the Estate received **$2,039,766.16** in net proceeds from that sale.

- The **Elston Property** sale closed on October 19, 2020, but this was a "short" sale, and the Estate did not receive proceeds at closing. However, the secured lender's deficiency claim was minimized due to the Receiver's sale efforts. The lender's asserted deficiency claim is $13,821.97;

- The **Miami Property** sale closed on November 17, 2020, and the Estate received **$178,847.12** in net proceeds from that sale; and

- The **Timber Lake Property** sale closed on December 9, 2020, and the Estate received (a) **$27,299,163.97** in net proceeds from that sale; and (b) **$928,064.51** in escrow return post-closing.

### c. Real Property Asset Operations During the Ninth Reporting Period.

5. For certain of the Real Property Assets that closed in prior reporting periods, some post-closing activity was required. Additionally, some expenses and operations are run through the main Northridge Holdings, Ltd. entity. An accounting of that activity is attached hereto as group **Exhibit B**.

6. The Receiver is continuing to investigate the existence and nature of other real estate that may constitute Receivership Assets.

## III. OTHER ASSETS.

7. As more fully set forth in the Eighth Amended Liquidation Plan, the Receivership Estate has identified potential assets that are not real property assets. Such assets are comprised primarily of: (a) shares of a penny stock; (b) a term life insurance policy on Mueller; (c) rights to

3

sale proceeds of a home located at 22W371 Emerson Avenue, Glen Ellyn, Illinois 60137 (the "Glen Ellyn Property"); and (d) various potential litigation claims. The Receiver is continuing his investigation to identify additional assets of the Receivership Estate.

8.     In summary, during the Ninth Reporting Period, the Receiver continued to pursue certain parties against whom the Receiver alleges liability for money owed to the Receivership arising from the receipt of "finder fees" and/or for being a "net winner" (i.e., receiving more cash than was invested). From the inception of the receivership to the date of this report, the Receiver has negotiated settlements totaling approximately $530,000.00 in cash and approximately $515,000.00 in claim reductions — amounting to a total benefit to the Estate of approximately $1,045,000.00.

9.     During the Ninth Reporting Period, the Receiver also worked with the SEC in connection with the assertion of insider claims and potential settlement of the same. The Receiver and counsel for Mr. Mueller and certain related persons and parties have been negotiating in good faith. Negotiations have included a potential sale of certain farm property in North Dakota (the "North Dakota Property").

**IV.     BUSINESS OPERATION AND PRESERVATION OF BOOKS AND RECORDS.**

10.     Business operations during the Ninth Reporting Period are described above. With respect to preservation of books and records, there is no update since the last report. The Receiver's review of these books and records and materials produced by Mueller is ongoing.

**V.     BANK AND INVESTMENT ACCOUNTS.**

11.     The Receiver continues to use a combination of pre-Receivership and post-Receivership accounts as operating accounts for the Real Property Assets. Now that most of the operating assets have been sold and the Court has approved the "pooling" of assets to pay all

claimants, the Receiver has begun closing and consolidating accounts. The Receiver has consolidated many of the Receivership accounts into one primary account at Axos Bank. The Receiver continues to use Receivership accounts to collect liquid assets of the Receivership Estate and to pay the administrative and other ordinary course expenses of the Receivership Estate.

## VI. CASH, ADMINISTRATIVE EXPENSES, UNENCUMBERED FUNDS, AND RECEIPTS AND DISBURSEMENTS

18.     The Receiver's Standardized Fund Accounting Report ("<u>SFAR</u>") for the Ninth Reporting Period is attached hereto as **<u>Exhibit C</u>**. The SFAR sets forth certain funds received by and disbursed from the Receivership Estate during the Ninth Reporting Period. As reported in the SFAR, the amount of cash on hand in the Receivership Accounts (in the Receivership Estate) as of December 31, 2021 was $24,209,582.37. The information set forth in the SFAR is based upon information and records available to the Receiver as of the date of this Report.

19.     The Operating Accounts had a collective balance of $105,411.59 as of December 31, 2021.

20.     Collectively, the Receivership Estate had approximately **<u>$24,314,993.96</u>** of cash on hand as of December 31, 2021.

21.     The vast majority of the decrease in cash in the Receivership accounts from the prior reporting period is due to: (a) payment of the Second Interim Distribution (as more fully described below) — approx. $5 million; and (b) payment of approved professional fees. Additionally, the account balance as of December 31, 2021 does <u>not</u> include the following payments: (a) payments of the Second Interim Distribution that were made post-December 31, 2021; or (b) instances where Second Interim Distribution payments were made, but the checks had not been cashed as of December 31, 2021.

22.     The approximate amount of administrative expenses incurred during the Ninth Reporting Period is summarized as follows[2]:

| Professional | Month/Year | Fees & Costs Incurred |
|---|---|---|
| Fox Swibel | October – December 2021 | $84,999.28 |
| AlixPartners | October – December 2021 | $34,547.40[3] |
| Dickler Kahn | October – December 2021 | $810.00 |
| KRD | October – December 2021 | $22,220.00 |
| ALAP | October – December 2021 | $10,220.00 |
| Plante Moran | October – December 2021 | $0.00 |
| Miller Kaplan | October – December 2021 | $10.659.20 |
| **Total** | | **$163.455.88** |

## VII.     WORK PERFORMED BY PROFESSIONALS

### a.     Fox Swibel.

23.     Fox Swibel's work during the Ninth Reporting Period related primarily to the following:

24.     During previous reporting periods, Fox Swibel has assisted the Receiver in formulating a distribution plan and drafted and revised a motion obtaining approval of a distribution plan (the "Distribution Plan Motion"). *See* Dkt. No. 272.  On September 9, 2021, the

---

[2]     The Receiver is in the process of reviewing all professionals' invoices, and thus the fees and costs stated herein are subject to modification.  All finalized fees and costs of professionals approved by the Receiver will be set forth in the forthcoming fee application covering the period of July 2021 through September 2021.

[3]     This is the gross amount invoiced and includes the agreed upon 25% holdback.

Court entered an Order Granting Receiver's Motion for an Order Approving Distribution Plan and Certain Other Related Relief (the "Distribution Plan Order" or "DPO"). Dkt. No. 288. The Distribution Plan Order authorized, among other things, the payment of approximately $10 million to Investors and creditors (the "First Interim Distribution").

25.     As set forth in the Eighth Receiver Report (Dkt. No. 299), the following priority payments have been made: (a) all Class 2 (Tax) payments (paid in full); (b) all Class 3 (Employee) payments (paid in full). Also, as of the filing of the Eight Receiver Report, with respect to Investor and general unsecured payments, the Receiver had paid the vast majority Investor First Interim Distribution payments (approximately 500 payments). The remaining outstanding First Interim Distribution payments (less than 10) have been paid in the Ninth Reporting Period to the extent the receiver received a W9. There are less than five (5) investors that the Receiver is still working to resolve their situation (i.e. need a W9 or still working through some complicated beneficiary issues). The Receiver expects to have these relatively few issues and payments resolved in the near future.

26.     After making the First Interim Distribution, the Receiver determined that an additional $5 million could be distributed to Class 4 (Investor) and Class 5 (General Unsecured) claimants (the "Second Interim Distribution"). Accordingly, pursuant to the DPO, the Receiver filed Receiver's Notice of Second Interim Distribution ("Notice of Second Interim Distribution"). Dkt. No. 301. No objection was made to the Notice of Second Interim Distribution and after the fourteen-day objection period ran, the Receiver began making the Second Interim Distribution.

27.     Fox Swibel assisted the Receiver with all tasks related to complying with the DPO and the payment of the hundreds of First and Second Interim Distribution payments

including, but not limited to: (a) collecting Investor W9 tax forms (for tax and address confirmation purposes); (b) confirming all addresses and processing change of addresses; (c) confirming all Investor names and account numbers with the various IRA custodians which hold certain Investors' investments in Northridge; (d) working through more complicated scenarios caused by Investors passing away; (e) coordinating all of the payments via check and via IRA custodians; and (f) answering all Investor questions relating to the Interim Distribution.

28.     Fox Swibel continued to work to resolve potential litigation claims and monetize the Receivership Estate's remaining assets as set forth in the Eighth Amended Liquidation Plan.

29.     Fox Swibel continued work relating to finalizing tax returns and seeking to obtain certainty as to the federal and state taxes owed/paid by the Receivership Entities.  During the Ninth Reporting Period, the vast majority of outstanding tax returns were filed, and any remaining filings were completed as of this filing or will be shortly thereafter.

30.     Lastly, Fox Swibel has monitored the Investor hotline to more cost efficiently respond to Investor questions and issues.  Fox Swibel, pursuant to SEC billing guidelines, does not bill for routine Investor inquiries.

     **b.  Forensic Accountant.**

29.     During the Ninth Reporting Period, AlixPartners LLP ("AlixPartners"), the Receiver's forensic accountant performed the following work:  (a) continued to refine analysis relating to the amount and validity of potential claims of the Investors/creditors of the Receivership Defendants; (b) assisted the Receiver in carrying out the court-approved claims process including, but not limited to, assistance with responding to Investors' questions and challenges to the Receiver's claims calculations, resolution of claim disputes and assisting the Receiver in making objections to certain claims; (c) supported the Receiver's efforts to collect claims of the Receivership Estate against third parties, including receivable claims, "finder"

claims, "net winner" claims and insider claims; (d) supported the Receiver's efforts related to the Distribution Plan Motion; (e) supported the Receiver's efforts related to making the First Interim Distribution; and (f) assisted with case administration.

30.    With respect to Investor/creditor claims, AlixPartners continued its efforts to refine its analysis of claims at the Investor level.  This work was a continuation of the work performed during prior reporting periods.

31.    With respect to the Receiver's pre-litigation efforts, AlixPartners provided the Receiver and his legal team support regarding third-party responses to the Receiver's settlement demand letters.  This support has assisted the Receiver and his legal team in settling significant claims (as set forth above and in the Eighth Amended Liquidation Plan).

32.    With respect to the Distribution Plan Motion, AlixPartners supported all the Receiver's efforts including, but not limited to, preparing relevant exhibits, running the rising tide and pro-rata recovery models (including removing non-cash inter-Investor transfers so that the rising tide analysis was more equitably performed) and allocating distributions between and/or among IRA and non-IRA investments.

33.    With respect to making the First and Second Interim Distributions, AlixPartners supported all the Receiver's efforts including, but not limited to, tracking all information needed to make hundreds of distributions and working with the Receiver's legal team to make sure all payments were accurate as to amount and sent to the correct address/IRA custodian. AlixPartners' work during the Ninth Reporting Period was critical to the Receiver making the hundreds of payments that comprised the First and Second Interim Distribution.

34.    Finally, AlixPartners assisted the Receiver with respect to general case administration.    AlixPartners    continues    to    keep    the    Receivership    Website

(www.northridgereceiver.alixpartners.com) up to date. These efforts facilitated efficient, cost-effective responses to Investors' questions.

### c. Tax Accountant, Forensic Tax Accountant and Tax Consultant.

35.     During the Ninth Reporting Period, Kutchins, Robbins & Diamond Ltd. ("KRD") continued to provide accounting, tax, payroll, and related services for the Receivership and the Receivership Defendants, including work related to the Receivership Defendants' 2020 tax filings, all yet-to-be filed tax returns and tax issues related to the Distribution Plan Motion.

36.     During the Ninth Reporting Period, ALAP Limited ("ALAP") assisted KRD in providing accounting, tax, and related services for the Receivership and the Receivership Defendants, including work related to the Defendants' 2020 tax filings, all yet-to-be filed tax returns and tax issues related to the Distribution Plan Motion.

37.     During the Ninth Reporting Period, Miller Kaplan Arase LLP ("Miller Kaplan") advised the Receiver on issues relating to the Distribution Plan, to obtaining finality on outstanding and potential tax issues and all yet-to-be filed tax returns.

38.     During the Ninth Reporting Period, no services were provided by Plante Moran, PLLC.

### D. Condominium Association Counsel.

39.     During the Ninth Reporting Period, Dickler, Kahn, Slowikowski, & Zavell, Ltd. ("Dickler Kahn") provided work relating to the turnover of associations where the Receivership Entities previous owned real property.

## VIII.     COMMUNICATIONS WITH INVESTORS.

40.     During the Ninth Reporting Period, the Receiver has primarily communicated with Investors through: (a) the northridgereceiver.alixpartners.com website; (b) the Investor

hotline now monitored by Fox Swibel; and (c) the Receiver and his legal team's direct communication with Investors, much of which was related to the Distribution Plan Motion and the First Interim Distribution. All calls were responded to (and the Receiver and his legal team are not charging for this time in accordance with the SEC's Billing Instructions, unless the call is with respect to substantive claims resolution and/or Distribution Plan and/or First Interim Distribution related issues). With respect to the website, it has been continually updated throughout the Ninth Reporting Period.

## IX. LIABILITIES/INVESTOR CLAIMS.

40. As set forth above, in conjunction with the claims process, the Receiver is continuing to investigate the existence and nature of potential liability and Investor claims. Based on the analysis performed to date, such Investor claims are generally as described in the SEC's *Emergency Motion for a Temporary Restraining Order to Prevent Violations of the Federal Securities Laws, to Appoint a Receiver, and Provide for Other Ancillary Relief* [Dkt. 3].

41. To date, based on work performed during the Ninth Reporting Period (and prior reporting periods) and the passing of the relevant Bar Date, the amount of claims against the receivership which the Receiver presently does not have objection to is approximately $41,316,474.55. Additionally, claims in the amount of approximately $831,138.16 are presently in dispute, some percentage of which are likely to be allowed. As a result, the Receiver presently estimates the non-administrative claims against the Receivership Estate to be between $41,316,474.55 and $42,250,000.00 (including Investor claims between $41,144,000.00 and $41,880,000.00). *See also* Distribution Plan Motion.

## X. LIQUIDATED AND UNLIQUIDATED CLAIMS

42. The Receiver's investigation of liquidated and unliquidated claims is ongoing.

XI.    **OPEN LITIGATION**

43.    As of the end of the Ninth Reporting Period, no open litigation exists.

XII.    **RECEIVERSHIP ASSET DESCRIPTION**

44.    The assets of the Receivership Estate are described in the attached Eighth Amended Liquidation Plan which in turn includes descriptions of anticipated and/or proposed dispositions of such assets.    At this time, the Receiver anticipates liquidating all of the Receivership Assets and, therefore, no such assets are expected to be retained.

XIII.    **KNOWN CREDITORS**

45.    Now that the Bar Date (as defined below) has passed, the creditor body is fully known and is described above and in the Distribution Plan Motion.

XIV.    **STATUS OF CREDITOR CLAIMS PROCEEDINGS**

46.    The Bar Date has passed and the creditor body is known as set forth above.

47.    During the Ninth Reporting Period, the Receiver filed an additional claims objection which was granted. *See* Dkt. Nos. 278, 296.  As of this filing, there are less than 10 unresolved claim disputes.

XV.    **RECOMMENDATION FOR CONTINUATION OF RECEIVERSHIP**

48.    In order to ensure the orderly liquidation of the Receivership Estate and equitable distribution of the funds obtained from such liquidation, the Receiver recommends that the Receivership continue.

Dated:  January 31, 2022

Respectfully submitted,

N. Neville Reid, Receiver

By: /s/ *Ryan T. Schultz* _____

N. Neville Reid
Ryan T. Schultz
L. Brandon Liss
Kenneth M. Thomas
Fox Swibel Levin & Carroll LLP
200 West Madison Street, Suite 3000
Chicago, IL 60606
Tel: 312.224.1200
Fax: 312.224.1201
nreid@foxswibel.com
rschultz@foxswibel.com
bliss@foxswibel.com
kthomas@foxswibel.com

*General Counsel to the Receiver*

# EXHIBIT A

## (Eighth Amended Liquidation Plan)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES** | ) | |
| **AND EXCHANGE COMMISSION,** | ) | **Civil Action No. 19-cv-05957** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Hon. John Z. Lee** |
| | ) | |
| **NORTHRIDGE HOLDINGS, LTD., ET AL.,** | ) | |
| | ) | **Magistrate Judge Susan E. Cox** |
| **Defendants.** | ) | |
| | ) | |

## RECEIVER'S EIGHTH AMENDED LIQUIDATION PLAN

N. Neville Reid, not individually, but solely as the Court-appointed receiver (the "Receiver") for the Estate of Defendant Northridge Holdings, Ltd. ("Northridge") and its related entities and affiliates as more particularly set forth in the Receivership Order (as defined herein) (collectively, the "Receivership Defendants," and their assets as more particularly identified therein, the "Receivership Assets," and such estate, the "Receivership Estate," and such administration, the "Receivership"), and pursuant to the powers vested in him by the *Order Appointing Receiver* entered by the Court on September 12, 2019 [Dkt. 22], as amended by the Court on February 13, 2020 [Dkt. 108; see also Dkt. 102] (the "Receivership Order"),[1] respectfully submits this *Eighth Amended Liquidation Plan* (the "Liquidation Plan").

## I.   COVID-19 IMPACT

1.     As set forth more fully below, the unprecedented COVID-19 crisis impacted the Receiver's operation and liquidation of the Receivership Assets but has not prevented the closing of the sale of nearly all of the real estate holdings of the estate, yielding substantial proceeds

---

[1]     Capitalized terms not defined herein shall be given the same meaning ascribed to such terms in the Receivership Order.

totaling nearly $40 million. The Receiver continues to use his best efforts to maximize the value of the remaining Receivership Assets. The Receiver has taken various measures to limit the potential negative impact of the pandemic on the value of the Receivership Assets. With respect to the Real Estate Assets (defined below), the Receiver has, until a property has been sold: (a) posted notices and information in an effort to ensure that residents stay as safe as possible; (b) continued to collect rents, including troubleshooting with tenants suffering a negative financial impact from the pandemic in order to maximize rent collection from such individuals; (c) to the extent an asset is under contract, used best efforts to close on such contract; and (d) continued the marketing of certain Real Estate Assets and postponed marketing efforts for others based upon the Receiver's brokers' and professionals' advice as to which strategy will maximize value. Importantly, the safety of the residents/tenants of the Real Estate Assets and the Receivership's employees and professionals is the Receiver's highest priority.

## II.    REAL ESTATE ASSETS

2.      The Receivership Assets include the following real estate (collectively, the "Real Estate Assets"): (a) a 96-unit apartment building located in Addison, Illinois (the "Chablis Property"); (b) a 576-unit apartment building located in West Chicago, Illinois (the "Timber Lake Property"); (c) a 192-apartment complex located in Bartlett, Illinois (the "Bartlett Lake Property"); (d) 48 condominiums located at 106 Surrey, Glen Ellyn, Illinois (the "Surrey Property"); (e) an office building located at 5097 N. Elston, Chicago, Illinois (the "Elston Property"); (f) a condominium unit located in Palatine, Illinois (the "Palatine Property"); (g) a condominium located at 3470 E. Coast Avenue, Unit #1003, Miami, Florida 33137 (the "Miami Property"); and (h) 36 vacant residential lots located near Palms Springs, California (the "Vacant Lots Property").

3.     As part of the marketing and sales process for the Real Estate Assets (subject to sale orders at the appropriate time), the Receiver has sought professional guidance in order to maximize the value of the Real Estate Assets.  Generally, the Receiver intends to market and sell each of the Real Estate Assets.  Specifically, with respect to each Real Estate Asset, the Receiver's plan is as follows (or the Receiver has already achieved the indicated results):

**a.  Chablis Property (Sale Closed).**

4.     The Receivership Order authorized Defendant Glenn C. Mueller ("Mueller") to consummate a pending sale of the Chablis Property.  [Dkt. 22, ¶ 40.]  The Chablis Property closing occurred on September 20, 2019.  In connection therewith, the Receiver (a) reviewed closing documents to ensure compliance with the Receivership Order; (b) ensured proper payment of the outstanding mortgage loan balance encumbering the Chablis Property; and (c) secured receipt of the remaining proceeds into the Receivership Estate.  [*Id.* at ¶¶ 40(h)-(j).]  The Receivership Estate was paid **$3,882,611.02** at closing.[2]

5.     Soon after the closing, the Receiver determined that the mortgage lender had failed to timely turn over a mortgage loan overpayment and tax escrow balance to the Receiver. Accordingly, the Receiver made a demand for turnover of the same and subsequently filed a *Motion to Enforce Receivership Order and For Entry of an Order Compelling J.P. Morgan Chase Bank, N.A. to Account for and Turn Over Receivership Assets to the Receiver* (the "Turnover Motion").  [Dkt. 53.]  The Receiver and mortgage lender subsequently resolved the Turnover Motion consensually, resulting in the Receiver's recovery of an additional (approximately) **$82,000.00** into the Receivership Estate.

---

[2]      With respect to all of the Real Estate Assets, the Receiver is still investigating the tax treatment of sales of the same and is working with his accountants to minimize any tax burden.  As a result, all amounts realized or estimated at closings are in pre-tax dollars.

**b. Bartlett Lake Property (Sale Closed).**

6.      The Receiver engaged Essex Realty Group, Inc. ("Essex") as real estate broker for the Bartlett Lake Property.  [See Dkt. 62.]  Additionally, the Receiver sought and obtained Court approval for sale procedures for the Bartlett Lake Property.  [See Dkts. 72, 92.]  On February 27, 2020, the Receiver filed his *Motion to Authorize Sale of Real Estate and Related Relief (Bartlett Property)* (the "Bartlett Sale Motion").  [Dkt. 110.]  The Bartlett Sale Motion sought approval of the sale of the Bartlett Lake Property to Monument Capital Management IV, LLC, an affiliate of Monument Capital Management (the "Bartlett Buyer"), for a purchase price of $19.3 million.  Approval of the Bartlett Sale Motion was delayed due to Mueller's assertion of a potential objection and the COVID-19 crisis.  The objection was resolved consensually.  On March 31, 2020, the Court entered an order approving the sale (the "Bartlett Sale Order").  [Dkt. 131.]  Under the relevant agreement, the sale was required to close on or before May 7, 2020.[3]

7.      In the weeks immediately following entry of the Bartlett Sale Order, the COVID-19 crisis worsened, thereby negatively impacting, among other things, residential real estate values. As a result, the Bartlett Buyer requested certain concessions from the Receiver, including a purchase price reduction.  The Receiver determined in his business judgment that preserving the transaction through a reasonable price reduction outweighed – and protected against – the risk and uncertainty of navigating a renewed marketing and sale process amidst the pandemic.  Accordingly, the Receiver filed a motion seeking (i) approval of the sale to the Bartlett Buyer at a reduced purchase price ($17.8 million) and (ii) related relief. [Dkt. 143.]  On May 19, 2020, the Court entered an order approving the sale of the Bartlett Lake Property at the reduced purchase price.  [Dkt. 147.]

---

[3]      Under the executed contract, the buyer retained the option to extend the closing date by posting additional non-refundable earnest money.

8.      On June 24, 2020, the sale of the Bartlett Lake Property closed.  At closing, after payment of all encumbrances and closing costs (secured lender, commissions, etc.), the Receivership Estate realized **$7,810,079.26** in net proceeds from the sale of the Bartlett Lake Property.  Shortly after closing, the lender for the Bartlett Lake Property refunded to the Receivership Estate **$230,029.20** in tax, insurance and reserve escrows.  Post-closing, the Receiver received approximately **$34,000.00** relating to post-closing rental collections and pro-rations.

### c.  Surrey Property (Sale Closed).

9.      The Receiver engaged 33 Realty as real estate broker for the Surrey Property.  On December 10, 2019, the Receiver filed his *Motion for Court Approval of: (A) Rates to be Charged by Receiver's Real Estate Broker (Surrey Property) and (B) Sales Procedures (Surrey Property)*.  [See Dkt. 82.]  On January 6, 2020, the Court granted this motion.  [Dkt. 93.]

10.     After completion of the marketing process, the Receiver selected an offer with which to proceed.  On April 28, 2020, the Receiver filed his *Motion (1) to Authorize Sale of Real Estate and Related Relief (Surrey Property) and (2) For Partial Relief from the Court's COVID-19 Order* (the "Surrey Sale Motion").  [Dkt. 138.]  The Surrey Sale Motion sought approval of the sale of the Surrey Property to Wildwood Property Ventures, LLC (the "Surrey Buyer") for a purchase price of $5.7 million.[4]  In the interest of efficiently closing the transaction during the COVID-19 crisis and related market uncertainty, the Receiver filed the Surrey Sale Motion while due diligence remained pending and the Surrey Buyer's financing contingency remained outstanding (i.e., the Receiver filed the Surrey Sale Motion so that any objection period and the due diligence/contingency period would run concurrently).

---

[4]      In a prior version of the Receiver's Liquidation Plan, the Receiver stated that he had obtained a broker opinion of value in excess of $8 million.  That valuation, however, was for all sixty (60) units – of which the Receivership Estate owned just forty-eight (48) – and was completed prior to the COVID-19 crisis.

11.     During due diligence, the Surrey Buyer identified certain issues with the Surrey Property, and the COVID-19 crisis continued to harm the real estate market. As a result, the Surrey Buyer requested a modest purchase price reduction. After good faith negotiations between the parties, the Receiver agreed to reduce the purchase from $5.7 million to $5.425 million in exchange for the Surrey Buyer's agreement to solidify the certainty of the transaction by (a) increasing its earnest money deposit from $100,000 to $400,000, and (b) waiving any outstanding due diligence and financing contingencies.

12.     On May 29, 2020, the Receiver simultaneously filed a motion to withdraw the Surrey Sale Motion [Dkt. 153] and an amended motion for approval of the sale of the Surrey Property (the "Amended Surrey Sale Motion").  [Dkts. 152, 153.] The Amended Surrey Sale Motion sought approval of the sale of the Surrey Property to the Surrey buyer at the reduced purchase price.  On June 2, 2020, the Court granted the Receiver's request to withdraw the Surrey Sale Motion.  [Dkt. 155.]  After the expiration of the relevant objection period, on June 17, 2020, the Court granted the Amended Surrey Sale Motion.  [Dkt. 158.]

13.     On July 24, 2020, the sale of the Surrey Property closed.  At closing, after payment of all encumbrances and closing costs (secured lender, commissions, etc.), the Receivership Estate received **$2,039,766.16** in net proceeds from the sale of the Surrey Property.[5]

### d.  Timber Lake Property (Sale Closed).

14.     In order to maximize the value of the Timber Lake Property, the Receiver's professionals recommended completing the then-pending parking lot expansion (to increase occupancy) and securing additional tenants to rent vacant units (to demonstrate demand to potential buyers) in advance of marketing the Timber Lake Property for sale.  Both of these

---

[5]     Here, the secured lender applied all escrow balances to reduce the loan balance to be paid at closing.

recommended steps were completed.

15.     In order to select a broker for the Timber Lake Property, the Receiver solicited broker proposals from five reputable local and national brokers, conducted interviews of such brokers and checked their references.  After completion of this competitive process, the Receiver selected CBRE, Inc. ("CBRE") as broker.  The Receiver then sought and received the Court's approval of the commission rate to be paid to the CBRE and the sales procedures for the Timber Lake Property.  [See Dkts. 112 and 156.]

16.     On September 22, 2020, the Receiver filed a motion seeking authority to sell the Timber Lake Property and related relief (the "Timber Lake Sale Motion").  [See Dkt. No. 183.] In summary, the Timber Lake Sale Motion: (a) sought authority to sell the Timber Lake Property to TMIF II Timber Lake LLC, an affiliate of Turner Impact Capital for **$50.25 million**; (b) described the marketing process for the Timber Lake Property and the Receiver's selection of the buyer; (c) sought authority to pay the relevant secured lender; and (d) sought to add as a receivership entity Timberwood Recreational Center, Inc., a fee owner of certain parcels of the Timber Lake Property.  Mueller filed an objection to the Timber Lake Sale Motion asserting that more time should be given to another potential buyer that expressed interest in purchasing the Timber Lake Property for a higher price.  After a hearing on the matter, the Court denied Mueller's objection, approved the sale of the Timber Lake Property and entered orders relating to the same.  [See Dkt. Nos. 209, 214, 215.]

17.     This sale closed on December 9, 2020, and the Estate received (a) **$27,299,163.97** in net proceeds from that sale; and (b) **$928,064.51**[6] in escrow return post-closing.  The Receiver has also collected funds for post-closing rent prorations and real estate tax reprorations as set

---

[6]     Total escrow funds on hand as of closing were $929,064.51.  However, the lender identified a $1,000.00 charge that was mistakenly omitted from the lender's payoff letter and the Receiver agreed to allow the lender to offset this amount from the escrow funds.

forth in the relevant purchase agreement.

**e. Elston Property (Sale Closed).**

18.     The Receiver engaged Millennium Properties R/E, Inc. ("MPI") as real estate broker for the Elston Property.  On January 17, 2020, the Receiver filed his *Motion for Court Approval of (A) Rates to be Charged by Receiver's Real Estate Broker (Elston Property); (B) Sales Procedures (Elston Property); (C) Rates to be Charged by Receiver's Real Estate Broker (Vacant Lots Property); and (D) Sales Procedures (Vacant Lots Property)*.  [See Dkt. 96.]  On February 7, 2020, the Court granted this motion.   [See Dkt. 106.]   Pursuant to the sale procedures, MPI marketed the Elston Property for auction, which auction was to be held on March 19, 2020.  Due to the onset of the COVID-19 crisis the week of the auction, the auction was postponed.

19.     During the continued marketing of the Elston Property, it became clear that a significant recovery was not likely with respect to this property.  As a result, the Receiver sought to sell the Elston Property at the highest price in order to limit the claim the bank would have against the Receivership Estate and minimize potential dilution of recovery for the investors.

20.     A buyer was located, and the Receiver sought and obtained court approval of the sale of the Elston Property for $650,000.00.  [See Dkt. Nos. 166, 178.]  This sale closed on October 19, 2020.  This sale did not result in proceeds for the Receivership Estate, but limited the bank's deficiency claim to $13,821.97.

**f. Miami Property (Sale Closed).**

21.     The Receiver engaged LG Realty Group, Inc. ("LG") to broker the Miami Property.  LG marketed and solicited offers for the Miami Property for the Receiver's review and consideration.  LG received offers in the $220,000-$235,000 range. The Receiver was finalizing

an offer to purchase when the COVID-19 crisis started, and the pandemic ultimately prevented consummation of the transaction. As such, the Receiver was forced to continue to market this property, but the COVID-19 crisis impacted the marketing of the property because access to this condominium building was materially restricted.

22.     On or about August 28, 2020, the Receiver received a $198,000.00 all-cash offer with no financial contingencies. After negotiation and execution of a real estate contract, the Receiver sought and obtained court approval of the sale. [See Dkt. Nos. 180, 201.] This sale closed on November 17, 2020, and the Estate received **$178,847.12** in net proceeds from that sale.

### g. Palatine Property (Sale Closed).

23.     The Receivership owned a condominium unit located at 486 Lake Shore Drive, Palatine, Illinois 60067, Unit 486 (the "Palatine Property"). There have been no renters or operations with respect to the Palatine Property during the Receivership.

24.     The Receiver sought and obtained authority to sell the Palatine Property for $145,000. [See Dkts. 88, 92.] Closing occurred on February 10, 2020. There was no mortgage on this property, and, after payment of closing costs, the Receiver received **$129,420.28** for the Estate.

### h. Vacant Lots Property.

25.     The Receiver engaged First Team Real Estate ("First Team") as real estate broker for the Vacant Lots Property. On January 17, 2020, the Receiver filed his *Motion for Court Approval of (A) Rates to be Charged by Receiver's Real Estate Broker (Elston Property); (B) Sales Procedures (Elston Property); (C) Rates to be Charged by Receiver's Real Estate Broker (Vacant Lots Property); (D) Sales Procedures (Vacant Lots Property)*, which was granted by the

9

Court. [See Dkt. Nos. 96, 106.] Pursuant to the proposed sales procedures, First Team was marketing the Vacant Lots Property and procured an offer for $36,000.00. On August 6, 2021, the Receiver filed his *Motion to Authorize Sale of Real Estate (California Vacant Lots) and For Related Relief* (the "Vacant Lots Sale Motion"). [Dkt. No. 276] On August 27, 2021, the Vacant Lots Sale Motion was granted an order approving same entered. [Dkt. No. 284]

26.     The sale of the Vacation Lots Property closed shortly after the instant reporting period (on January 11, 2022). The Receivership realized **$22,782.13**.

## III.     OTHER ASSETS

### a. Securities Assets.

27.     The Receivership Estate includes approximately 412,190 shares of stock in The Wellness Center USA, Inc. ("WCUI" and such shares the "Shares"), through the Charles Schwab brokerage firm. The price per share as of December 31, 2021 was approximately $0.02. While various creditors and insiders of the Northridge Entities claim ownership of the Shares, based on the advice of counsel and his financial consultants the Receiver has concluded that the WCUI shares should be treated and liquidated like any other asset of the receivership estate, with the proceeds distributed to investors in accordance with a court-approved distribution plan. The Receiver has filed a motion seeking authority to sell the Shares, which was granted by the Court. [*See* Dkt Nos. 267, 270.]

28.     As of this filing, the Shares have sold for a collective sale price of $9,554.96. The Receiver, with the assistance of the Charles Schwab brokerage firm, continued to seek to liquidate the remaining Shares. Approximately 412,190 Shares remain unsold.

### b. Glen Ellyn Property.

29.    The Receiver asserted an interest in a house located at 22W371 Emerson Avenue, Glen Ellyn, Illinois 60137 (the "Glen Ellyn Property").  The Glen Ellyn Property was owned by Bruce and Cheryl Swift (together, the "Swifts"), acquaintances of Mueller (the Swifts are also investors in the Receivership Entities).  Regarding the pre-Receivership arrangement, in or about June 2008, Northridge paid the Swifts $70,000 for the right to rent out the Glen Ellyn Property and keep all related rental proceeds.  Under this agreement, Northridge paid all expenses associated with the Glen Ellyn Property and kept all of the rents.  Upon sale, the proceeds were to be split between the parties.  While the deal seems to have been amended at times (both orally and possibly in writing), the essential terms of the deal have remained the same.  The Receiver negotiated with the Swifts' attorney to (a) place the Glen Ellyn Property on the market for sale; (b) share in some of the carrying costs; and (c) come to a settlement with respect to the division of the proceeds of a sale of the property.  The Swifts were then paying the carrying costs on the property (Northridge was doing so pre-Receivership).  The Receiver sought and received Court approval of this settlement.  [*See* Dkt. Nos. 134, 149.]

30.    The sale of the Glen Ellyn Property closed on August 17, 2020 for $269,900.00. The Receivership has received **$18,188.76** pursuant to the settlement with the Swifts.

### c. Rocky Ridge L.P.

31.    Mueller owns a 50% interest in Rocky Ridge L.P. which, in turn, is the fee owner of a large piece of vacant real estate in North Dakota (the "North Dakota Property").  The Receiver continues to investigate the value of the North Dakota Property and is working with Mueller and his legal team to sell the property with proceeds escrowed subject to further order of the Court. (Mueller's brother, Dale, also owns a percentage of this property either directly or

indirectly through entity ownership.)  The Receiver is currently in negotiations regarding the disposition of Mueller's and his respective relatives' interests (and/or the related ownership entities' interests) in the North Dakota Property.  Such negotiations relate to a potential settlement of claims that the Receivership Estate has asserted against them.

### d.  Life Insurance.

32.  Receivership Defendant Amberwood Holdings Limited Partnership purchased a key man term life insurance policy on Mueller in the amount of $5,000,000.00 (as the death benefit).  The policy is a term policy so it has no current cash value.   The monthly premium is approximately $3,000, which the Receiver has confirmed is an excellent rate for someone of Mueller's age (72).   Based on the Receiver's further consultation with insurance market experts and brokers, it does not appear at this time that the policy has any material market value in part because of how the policy is structured.  While the Receiver is continuing to evaluate all options related to the policy, including whether it can or should be assigned to a trust for the benefit of the applicable creditors of the Receivership, the Receiver currently anticipates abandoning the policy to Mueller who would then be responsible for making further premium payments.

### e.  Litigation Claims.

33.  The Receiver has identified potential litigation targets that can primarily be summarized as follows: (a) claims to recover receivables of the Receivership Defendants; (b) claims against "finders" to recover fees/commissions paid for sourcing investments in the Receivership Defendants; (c) claims against "net-winners" for amounts paid to investors over and above the cash that such investors put into the Receivership Defendants; and (d) numerous claims against the insiders of the Receivership Defendants.  The Receiver also sought and received authority for settlement procedures with respect to settling claims valued at less than $1

million.  [See Dkt. Nos. 175, 191.]

34.    With respect to the receivable claims, demand letters have been sent, and the Receiver has settled some claims and continues to pursue settlement of the remaining claims.

35.    With respect to the "finder" claims, demand letters have been sent, and the Receiver has settled some claims and continues to pursue settlement of the remaining claims.

36.    With respect to the "net winner" claims, most of the demand letters have been sent, and the Receiver has settled some claims and continues to pursue settlement of the remaining claims.

37.    As of the date hereof, the Receiver has negotiated settlements for receivable, "finder" and "net-winner" claims collectively totaling (1) approximately $530,000.00 in cash and (2) approximately $515,000.00 in claim reductions — amounting to a total benefit to the Estate of approximately $1,045,000.00.

38.    The Receiver believes he has collected the majority of remaining receivable, "finder" and "net-winner" claims, but cannot currently estimate recovery on account of all of the Receivership Estate's remaining receivable, "finder" and "net-winner" claims.

39.    With respect to claims against insiders, the Receiver has sent demand letters and worked with the SEC to identify and quantify these claims.  Settlement discussions are ongoing.

40.    The Receiver has sought and received Court authority to pursue litigation against the insiders and certain, receivable claimants, "finders" and 'net winners."  [See Dkt. Nos. 229, 234.]

    f.   Tax Refunds.

41.    The Receiver's tax professionals have completed all outstanding tax returns.  All are filed or will soon be filed. Presently, the Receiver estimates that the Receivership Entities are

entitled to approximately $430,000.00 in tax refunds, which the Estate has already received. These refunds relate to amounts paid the Illinois Department of Revenue on behalf of out-of-state investors as required by Illinois law.  While the Receiver originally believed such payments were necessary, the Receiver's filed returns and amended returns that assert no taxable gain.

45.     As set forth in the Receiver's Distribution Plan Motion (*See* Dkt. No. 272) and the Order Granting Receiver's Motion for an Order Approving Distribution Plan and Certain Other Related Relief (the "<u>Distribution Plan Order</u>" or "<u>DPO</u>") (Dkt. No. 288). the Receiver was authorized and in fact did deduct the amount of taxes paid on behalf of each relevant Investors from such Investor's first interim distribution.  These refunds are a subject to a Motion filed by the Receiver to reserve these refunds for the benefit of out-of-state investors as their distributions have been reduced to account for these payments.  *See* Dkt. Nos. 306, 313.

**g.  Investigation Ongoing.**

42.     The Receiver is continuing to investigate the existence and nature of other assets and claims that may constitute Receivership Assets.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

Dated:  January 31, 2022

Respectfully submitted,

N. Neville Reid, Receiver

By: /s/ *Ryan T. Schultz*       _

N. Neville Reid
Ryan T. Schultz
L. Brandon Liss
Kenneth M. Thomas
Fox Swibel Levin & Carroll LLP
200 West Madison Street, Suite 3000
Chicago, IL 60606
Tel: 312.224.1200
Fax: 312.224.1201
nreid@foxswibel.com
rschultz @foxswibel.com
bliss@foxswibel.com
kthomas@foxswibel.com

*General Counsel to the Receiver*

**EXHIBIT B**

**(Group Exhibit – Operating Entity Financials)**

Case: 1:19-cv-05957 Document #: 314 Filed: 01/31/22 Page 31 of 50 PageID #:5258

# Amberwood Holdings
# Profit & Loss
### October through December 2021

| | Oct - Dec 21 |
|---|---|
| **Ordinary Income/Expense** | |
| **Expense** | |
| **Bank Service Charges** | 25.29 |
| **Insurance** | |
| **Life - Glenn** | 9,054.45 |
| **Total Insurance** | 9,054.45 |
| **Total Expense** | 9,079.74 |
| **Net Ordinary Income** | -9,079.74 |
| **Net Income** | **-9,079.74** |

Case: 1:19-cv-05957 Document #: 3141 Filed: 01/31/22 Page 32 of 50 PageID #:5259

# Timber Lake Apartments, LLC
## Profit & Loss
### October through December 2021

| | Oct - Dec 21 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Expense** | |
| Alarm | 392.00 |
| **Total Expense** | 392.00 |
| **Net Ordinary Income** | -392.00 |
| **Net Income** | **-392.00** |

2:08 PM
01/25/22
Cash Basis

**Northridge Holdings, LTD**
# Profit & Loss
## October through December 2021

|  | Oct - Dec 21 |
|---|---|
| **Ordinary Income/Expense** |  |
| **Expense** |  |
| **Bank Service Charges** | 351.79 |
| **Insurance** |  |
| **Health Insurance - Northridge** |  |
| Northridge | 15,330.80 |
| **Total Health Insurance - Northridge** | 15,330.80 |
| **Total Insurance** | 15,330.80 |
| **Internet** | 575.40 |
| **Payroll Expenses** | 115,776.69 |
| **Payroll Taxes** |  |
| FICA | 887.65 |
| FUTA | 0.00 |
| Medicare | 1,678.76 |
| SUTA | 0.00 |
| Payroll Taxes - Other | 242.71 |
| **Total Payroll Taxes** | 2,809.12 |
| **Penalties** | 1,102.59 |
| **Postage and Delivery** | 88.56 |
| **Rent** | 6,468.00 |
| **Repairs** |  |
| Computer Repairs | 1,244.00 |
| **Total Repairs** | 1,244.00 |
| **Supplies** |  |
| Office | 246.16 |
| **Total Supplies** | 246.16 |
| **Telephone** | 560.00 |
| **Utilities** |  |
| Gas and Electric | 1,087.75 |
| **Total Utilities** | 1,087.75 |
| **Total Expense** | 145,640.86 |
| **Net Ordinary Income** | -145,640.86 |
| **Net Income** | **-145,640.86** |

**EXHIBIT C**

**(SFAR and Schedules)**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
Receivership: Civil Court Case No. 1:2019cv05957
REPORTING PERIOD 10/01/2021 TO 12/31/2021

| FUND ACCOUNTING (See Instructions): | | Current Reporting Period 10/01/21 to 12/31/21 | | | 07/12/19 to 12/31/21 |
|---|---|---|---|---|---|
| | | Detail | Subtotal | Grand Total | Case to Date |
| Line 1 | Beginning Balance (as of 7/1/2021) | | | $29,966,325.30 | |
| | *Increases in Fund Balance:* | | | | |
| Line 2 | Business Income | | | | $117,317.98 |
| Line 3 | Cash and Securities | | | | |
| Line 4 | Interest/Dividend Income | $22,344.15 | | $22,344.15 | $142,249.90 |
| Line 5 | Business Asset Liquidation | $605,815.90 | | $605,815.90 | $43,274,448.74 |
| Line 6 | Personal Asset Liquidation | | | | |
| Line 7 | Third-Party Litigation | | | | $473,919.80 |
| Line 8 | Miscellaneous – Other | | | | $438.25 |
| | Total Funds Available (Lines 1-8): | | | $628,160.05 | $44,008,374.67 |
| | *Decreases in Fund Balance:* | | | | |
| Line 9 | Disbursements to Senior Secured Lenders/Investors | $5,719,949.05 | | $5,719,949.05 | $14,561,025.80 |
| Line 10 | Disbursements for Receivership Operations | | | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | $378,724.19 | | $378,724.19 | $2,936,649.81 |
| Line 10b | *Business Asset Expenses* | $222,362.74 | | $222,362.74 | $1,648,746.76 |
| Line 10c | *Personal Asset Expenses* | | | | |
| Line 10d | *Hospital Settlements & Investment Expenses* | | | | |
| Line 10e | *Third-Party Litigation Expenses* | | | | |
| | 1. Attorney Fees | | | | $35,657.67 |
| | 2. Litigation Expenses | | | | |
| | *Total Third-party Litigation Expenses* | | | | |
| Line 10f | *Tax Administrator Fees and Bonds* | | | | |
| Line 10g | *Federal and State Tax Payments* | $63,867.00 | | $63,867.00 | $616,712.30 |
| | Total Disbursements for Receivership Operations | | - | $6,384,902.98 | $19,798,792.34 |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund: | | - | - | |
| Line 11a | *Distribution Plan Development Expenses:* | | - | | |
| | 1. Fees: | | - | | |
| | Fund Administrator | | - | | |
| | Independent Distribution Consultant (IDC) | | - | | |
| | Distribution Agent | | - | | |
| | Consultants | | - | | |
| | Legal Advisers | | - | | |
| | Tax Advisers | | - | | |
| | 2. Administrative Expenses | | - | | |
| | 3. Miscellaneous | | - | | |
| | *Total Plan Development Expenses* | | - | | |
| Line 11b | *Distribution Plan Implementation Expenses:* | | - | | |
| | 1. Fees: | | - | | |
| | Fund Administrator | | - | | |
| | IDC | | - | | |
| | Distribution Agent | | - | | |
| | Consultants | | - | | |
| | Legal Advisers | | - | | |
| | Tax Advisers | | - | | |
| | 2. Administrative Expenses | | - | | |
| | 3. Investor Identification: | | - | | |
| | Notice/Publishing Approved Plan | | - | | |
| | Claimant Identification | | - | | |
| | Claims Processing | | - | | |
| | Web Site Maintenance/Call Center | | - | | |
| | 4. Fund Administrator Bond | | - | | |
| | 5. Miscellaneous | | | | |

|  |  | Detail | Subtotal | Grand Total | Case to Date |
|---|---|---|---|---|---|
|  | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - |  |  |  |
|  | *Total Plan Implementation Expenses* |  | - |  |  |
|  | **Total Disbursements for Distribution Expenses Paid by the Fund** |  |  | - |  |
| Line 12 | **Disbursements to Court/Other:** | - |  |  |  |
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | - |  |  |  |
| Line 12b | *Federal Tax Payments* | - |  |  |  |
|  | **Total Disbursements to Court/Other:** | - | - |  | - |
|  | **Total Funds Disbursed (Lines 9-12):** |  |  | $6,384,902.98 | $19,798,792.34 |
| Line 13 | **Ending Balance (As of 12/31/21):** |  |  | $24,209,582.37 | $24,209,582.37 |
| Line 14 | **Ending Balance of Fund - Net Assets:** |  |  |  |  |
| Line 14a | *Cash & Cash Equivalents* |  |  | $105,411.59 | $105,411.59 |
| Line 14b | *Investments* |  |  | Undetermined-Investigating- | Undetermined-Investigating- |
| Line 14c | *Other Assets or Uncleared Funds* |  |  | Undetermined-Investigating- | Undetermined-Investigating- |
|  | **Total Ending Balance of Fund - Net Assets** |  |  | $24,314,993.96 | $24,314,993.96 |

| OTHER SUPPLEMENTAL INFORMATION: |  | 10/01/21 to 12/31/21 | | | 09/12/19 to 12/31/21 |
|---|---|---|---|---|---|
|  |  | Detail | Subtotal | Grand Total | Case to Date |
| Line 15 | *Report of Items NOT To Be Paid by the Fund:* **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | - |  |  | - |
| Line 15 | *Disbursements for Plan Administration Expenses* |  |  |  |  |
| Line 15a | *Plan Development Expenses Not Paid by the Fund:* | - |  |  |  |
|  | 1. Fees: | - |  |  |  |
|  | Fund Administrator | - |  |  |  |
|  | IDC | - |  |  |  |
|  | Distribution Agent | - |  |  |  |
|  | Consultants | - |  |  |  |
|  | Legal Advisers | - |  |  |  |
|  | Tax Advisers | - |  |  |  |
|  | 2. Administrative Expenses | - |  |  |  |
|  | 3. Miscellaneous | - |  |  |  |
|  | *Total Plan Development Expenses Not Paid by the Fund* |  | - |  |  |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | - |  |  |  |
|  | 1. Fees: | - |  |  |  |
|  | Fund Administrator | - |  |  |  |
|  | IDC | - |  |  |  |
|  | Distribution Agent | - |  |  |  |
|  | Consultants | - |  |  |  |
|  | Legal Advisers | - |  |  |  |
|  | Tax Advisers | - |  |  |  |
|  | 2. Administrative Expenses | - |  |  |  |
|  | 3. Investor Identification: | - |  |  |  |
|  | Notice/Publishing Approved Plan | - |  |  |  |
|  | Claimant Identification | - |  |  |  |
|  | Claims Processing | - |  |  |  |
|  | Web Site Maintenance/Call Center | - |  |  |  |
|  | 4. Fund Administrator Bond | - |  |  |  |
|  | 5. Miscellaneous | - |  |  |  |
|  | 6. FAIR Reporting Expenses | - |  |  |  |
|  | *Total Plan Implementation Expenses Not Paid by the Fund* |  | - |  |  |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - |  |  |  |
|  | **Total Disbursements for Plan Administrative Expenses Not Paid by the fund** |  | - | - |  |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | - | - |  |  |
| Line 16a | *Investment Expenses/CRIS Fees* | - |  |  |  |
| Line 16b | *Federal Tax Payments* | - |  |  |  |
|  | **Total Disbursements to Court/Other Not Paid by the Fund:** |  |  |  |  |

| Line 17 | DC & State Tax Payments | | - | - | | - |
|---|---|---|---|---|---|---|
| **Line 18** | **No. of Claims:** | | | | | |
| Line 18a | # of Claims Received This Reporting Period | | | | | 0- |
| Line 18b | # of Claims Received Since Inception of Fund | | | | | 0- |
| **Line 19** | **No. of Claimants / Investors:** | | | | | |
| Line 19a | # of Claimants / Investors Paid This Reporting Period | | 277 | | | 277- |
| Line 19b | # of Claimants / Investors Paid Since Inception of Fund | | | | | 518- |

Receiver:

By: _____

(signature)

N. Neville Reid

(printed name)

Receiver

(title)

Date: 1/31/22

Schedule 1.1 - DETAIL OF LINE 1, BEGINNING BALANCE

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No.  1:2019cv05957**
**REPORTING PERIOD  10/01/2021 -12/31/2021**

| Entity | Bank Name | Account Number | As of Date | Balance |
|---|---|---|---|---|
| Amberwood | Axos Bank | ***0153 | 10/1/2021 | $ - |
| Azlan Group, LLC | Axos Bank | ***0161 | 10/1/2021 | $ - |
| Brookstone Investment Group, Ltd | Axos Bank | ***0179 | 10/1/2021 | $ - |
| Cornerstone Limited Partnership | Axos Bank | ***0187 | 10/1/2021 | $ - |
| Eastridge Holdings, Ltd. | Axos Bank | ***0195 | 10/1/2021 | $ - |
| Guardian Investment Group, Ltd. | Axos Bank | ***0203 | 10/1/2021 | $ - |
| Northridge Holdings, Ltd. | Axos Bank | ***0211 | 10/1/2021 | $ - |
| Paragon Group Limited | Axos Bank | ***0229 | 10/1/2021 | $ - |
| Ridgeview Group I | Axos Bank | ***0237 | 10/1/2021 | $ - |
| Southridge Holdings, Ltd. | Axos Bank | ***0245 | 10/1/2021 | $ - |
| Unity Investment Group, Ltd. | Axos Bank | ***0252 | 10/1/2021 | $ - |
| 106 Surrey | Axos Bank | ***0260 | 10/1/2021 | $ - |
| 561 Deere Park | Axos Bank | ***0278 | 10/1/2021 | $ - |
| 610 Lincoln | Axos Bank | ***0286 | 10/1/2021 | $ - |
| Timber Lake Apartments, LLC | Axos Bank | ***0294 | 10/1/2021 | $ - |
| 5097 Elston Limited Partnership | Axos Bank | ***0302 | 10/1/2021 | $ - |
| 5528 Hyde Park Limited Partnership | Axos Bank | ***0310 | 10/1/2021 | $ - |
| 106 Surrey Limited Partnership | Axos Bank | ***0328 | 10/1/2021 | $ - |
| 610 Lincoln Limited Partnership | Axos Bank | ***0336 | 10/1/2021 | $ - |
| G&C Mueller Family Limited Partnership | Axos Bank | ***0344 | 10/1/2021 | $ - |
| 149 Mason Limited Partnership | Axos Bank | ***0351 | 10/1/2021 | $ - |
| Beacon Foundation | Axos Bank | ***0369 | 10/1/2021 | $ - |
| Willow Creek Landscaping LP | Axos Bank | ***0377 | 10/1/2021 | $ - |
| 139 Austin LP | Axos Bank | ***0385 | 10/1/2021 | $ - |
| 149 Mason/Trust #12655 | Axos Bank | ***0393 | 10/1/2021 | $ - |
| Mueller Painting & Decorating | Axos Bank | ***0401 | 10/1/2021 | $ - |
| Ameritrade | Axos Bank | ***0419 | 10/1/2021 | $ - |
| Northridge Holdings Recievership Settlement Fund | Axos Bank | ***0591 | 10/1/2021 | $ 29,966,325.30 |
| | | | | $ 29,966,325.30 |

Schedule 2.1 to 8.1- LINES 2-8 INCREASES IN FUND BALANCE

STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis
Receivership; Civil Court Case No. 1:2019cv05957
REPORTING PERIOD 10/01/2021 -12/31/2021

**Line 4 - INTEREST/DIVIDEND INCOME**

| Date | Bank Name | Account Name | Account No. | Payor | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| 10/31/2021 | Axos | Northridge Holdings Recievership Settlement Fund ((NHRSF) | xxx0591 | Axos | Interest | $ 7,735.06 |
| 11/30/2021 | Axos | NHRSF | xxx0591 | Axos | Interest | $ 7,279.50 |
| 12/31/2021 | Axos | NHRSF | xxx0591 | Axos | Interest | $ 7,329.59 |
| | | | | | | $ 22,344.15 |

**Line 5-BUSINESS ASSET LIQUIDATION**

| Date | Bank Name | Account Name | Account No. | Payor | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| 10/28/2021 | Axos | Northridge Holdings Recievership Settlement Fund (NHRSF) | xxx0591 | SUSANA A. MENDOZA, COMPTROLLER | 581 DEERE PARK CIRCLE LP Tax Refund | $ 122,265.00 |
| 10/28/2021 | Axos | NHRSF | xxx0591 | SUSANA A. MENDOZA, COMPTROLLER | 9620 IVANHOE LP Tax Refund | $ 1,475.00 |
| 10/28/2021 | Axos | NHRSF | xxx0591 | SUSANA A. MENDOZA, COMPTROLLER | HAWTHORNE LIMITED PARTNERSHIP Tax Refund | $ 9,508.00 |
| 10/29/2021 | Axos | NHRSF | xxx0591 | SUSANA A MENDOZA | TIMBER LAKE SHARED APPRECIATION IL - IL Tax Refund | $ 24,225.00 |
| 10/29/2021 | Axos | NHRSF | xxx0591 | SUSANA A MENDOZA | KINGS CROSS LIMITED PARTNERSHIP - IL Tax Refund | $ 196,952.00 |
| 11/4/2021 | Axos | NHRSF | xxx0591 | Susana A. Mendoza | TIMBER LAKE SHARED APPRECIATION IL - IL Tax Refund | $ 38,201.00 |
| 11/4/2021 | Axos | NHRSF | xxx0591 | Susana A. Mendoza, Comptroller | ARBOR LIMITED PARTNERSHIP; IL Tax Refund | $ 51,003.00 |
| 11/15/2021 | Axos | NHRSF | xxx0591 | FORGE TRUST CO. | IRA SVCS FBO IRA SERVICES, SUSPENSE ACCOUNT IRA888888 RETURN | $ 161,012.14 |
| 12/2/2021 | Axos | NHRSF | xxx0591 | United States Treasury | Northridge Holdings Ltd Tax Refund | $ 1,174.76 |
| | | | | | | $ 605,815.90 |

**Line 7 - THIRD PARTY LITIGATION**

| Date | Bank Name | Account Name | Account No. | Payor | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| | | | | | | $ - |

| | |
|---|---|
| Increases in Funds Balance Lines 1-8 | $ 628,160.05 |

LINE 9- DECREASES IN FUND BALANCE

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
Receivership; Civil Court Case No. 1:2019cv05957
REPORTING PERIOD 10/01/2021 - 12/31/2021

**Line 9 Disbursements to Senior Secured Lenders/Investors**

| Date | Bank Name | Account Name | Account No. | Description | Amount |
|------|-----------|--------------|-------------|-------------|--------|
| | AXOS BANK | Northridge Holdings Recievership Settlement Fund (NHRSF) | xxx0591 | | |
| 10/4/2021 | | | | Interim distribution to Investor No. 38 | $ 6,853.30 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 109 | $ 2,001.99 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 115 | $ 116.82 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 132 | $ 2,502.49 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 172 | $ 3,309.74 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 180 | $ 2,150.43 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 224 | $ 975.70 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 371 | $ 253.53 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 445 | $ 15,154.87 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 452 | $ 2,541.41 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 484 | $ 14,080.21 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 655 | $ 1,501.50 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 668 | $ 33,268.92 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 743 | $ 1,626.63 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 770 | $ 12,371.64 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 801 | $ 21,524.38 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 812 | $ 6,147.90 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 859 | $ 39,301.65 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 944 | $ 907.15 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Claim Distribution - Claim 1 | $ 3,458.94 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Claim Distribution - Claim 2 | $ 11,479.50 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Claim Distribution - Claim 56-1 | $ 300.30 |
| 10/4/2021 | AXOS BANK | NHRSF | xxx0591 | Claim Distribution - Claim 12 | $ 525.00 |
| 10/6/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 484 Reversal The cl | $ (14,080.21) |
| 10/6/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 484 | $ 14,080.21 |
| 10/7/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 715 Reversal | $ (25,024.93) |
| 10/7/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investors | $ 328,626.90 |
| 10/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 49 | $ 1,060.56 |
| 10/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 58 | $ 6,018.67 |
| 10/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 93 | $ 2,069.20 |
| 10/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 439 | $ 1,251.25 |
| 10/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 575 (50/50 Split) | $ 216.23 |
| 10/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 575 (50/50 Split) | $ 216.23 |
| 10/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 580 | $ 15,640.58 |
| 10/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 754 | $ 75.08 |
| 10/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 715 | $ 25,024.93 |
| 10/14/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 131 Reversal | $ (47,646.59) |
| 10/14/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investors re IRA | $ 73,786.89 |
| 10/14/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 131 | $ 47,646.59 |
| 10/21/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 100 | $ 78,409.92 |
| 10/21/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 238 | $ 37,573.44 |
| 10/21/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 243 | $ 7,125.68 |
| 10/21/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 244 | $ 9,939.38 |
| 10/21/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 407 | $ 40,972.07 |
| 10/21/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 574 | $ 16,271.21 |

LINE 9- DECREASES IN FUND BALANCE

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No. 1:2019cv05957**
**REPORTING PERIOD 10/01/2021 - 12/31/2021**

| | | | | | | |
|---|---|---|---|---|---|---|
| 10/21/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 616 | $ | 12,512.47 |
| 10/21/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 653 | $ | 5,959.17 |
| 10/21/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 677 | $ | 9,284.25 |
| 11/1/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 214 | $ | 12,512.47 |
| 11/1/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 221 | $ | 5,255.24 |
| 11/1/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor No. 254 | $ | 22,751.85 |
| 11/1/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 856 | $ | 2,233.48 |
| 11/3/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 862 | $ | 500.50 |
| 11/4/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 862 Reversal | $ | (500.50) |
| 11/16/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 119 | $ | 145,069.32 |
| 11/16/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 119 | $ | 15,942.82 |
| 11/17/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 504 | $ | 5,875.31 |
| 12/9/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 337 Reversal | $ | (4,914.92) |
| 12/9/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 341 Reversal | $ | (250.25) |
| 12/9/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 536 | $ | 5,004.99 |
| 12/9/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 720 | $ | 11,261.22 |
| 12/9/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 237 | $ | 574.98 |
| 12/9/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 897 | $ | 2,642.63 |
| 12/9/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 341 | $ | 250.25 |
| 12/9/2021 | AXOS BANK | NHRSF | xxx0591 | Interim distribution to Investor No. 337 | $ | 4,914.92 |
| 12/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 883 (1/3) | $ | 3,503.49 |
| 12/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 883 (2/3) | $ | 3,503.49 |
| 12/13/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 883 (3/3) | $ | 3,503.49 |
| 12/14/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 85 | $ | 700.70 |
| 12/14/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 345 | $ | 250.25 |
| 12/14/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 875 (1/2) | $ | 1,876.87 |
| 12/14/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 875 (2/2) | $ | 1,876.87 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 37 | $ | 23,151.47 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 49 | $ | 877.09 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 50 | $ | 33,589.05 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 55 | $ | 633.85 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 56 | $ | 7,014.17 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 58 | $ | 5,106.31 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 60 | $ | 65,351.46 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 61 | $ | 21,599.26 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 71 | $ | 2,069.57 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 72 | $ | 9,012.05 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. to claim 73 | $ | 25,424.41 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 78 | $ | 72,105.54 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 85 | $ | 579.48 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 96 | $ | 10,049.35 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 105 | $ | 3,038.39 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No.107 | $ | 2,137.57 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 109 | $ | 1,655.66 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 111 | $ | 903.57 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 112 | $ | 24,191.61 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 113 | $ | 2,690.45 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 119 | $ | 51,557.85 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 122 | $ | 5,173.94 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 123 | $ | 5,173.94 |

**LINE 9- DECREASES IN FUND BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No. 1:2019cv05957**
**REPORTING PERIOD 10/01/2021 - 12/31/2021**

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 125 | $ | 5,170.09 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 130 | $ | 10,347.87 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 131 | $ | 9,494.15 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 134 | $ | 10,347.87 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 145 | $ | 12,919.00 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 150 | $ | 7,850.37 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 172 | $ | 3,104.36 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 180 | $ | 1,014.80 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 184 | $ | 47,070.69 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 192 | $ | 10,347.87 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 193 | $ | 31,043.62 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 198 | $ | 10,347.87 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 204 | $ | 9,333.55 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 205 | $ | 4,139.15 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 214 | $ | 10,347.87 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 220 | $ | 50,389.81 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 221 | $ | 2,174.93 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 225 | $ | 5,173.94 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 254 | $ | 17,492.08 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 260 | $ | 1,471.97 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 269 | $ | 2,463.84 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 271 | $ | 6,208.72 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 300 | $ | 31,043.62 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 302 | $ | 51,687.44 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 308 | $ | 5,173.94 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 319 | $ | 4,835.15 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 333 | $ | 341.46 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 336 | $ | 5,083.73 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 337 | $ | 3,869.32 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 340 | $ | 5,516.44 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 341 | $ | 206.96 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 342 | $ | 2,069.57 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 345 | $ | 206.96 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 366 | $ | 1,193.54 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 389 | $ | 14,682.38 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 390 | $ | 20,695.74 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 393 | $ | 93.13 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 394 | $ | 10,130.26 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 439 | $ | 1,034.79 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 445 | $ | 14,392.40 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 482 | $ | 1,977.02 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 484 | $ | 10,898.06 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 487 | $ | 3,066.12 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 531 | $ | 20,695.74 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 536 | $ | 4,139.15 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 538 | $ | 6,305.99 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 551 | $ | 2,069.57 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 554 | $ | 28,974.04 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 556 | $ | 11,945.63 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 557 | $ | 17,424.93 |

LINE 9- DECREASES IN FUND BALANCE

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No. 1:2019cv05957**
**REPORTING PERIOD 10/01/2021 - 12/31/2021**

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 563 | $ | 7,638.94 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 573 | $ | 2,069.57 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 580 | $ | 12,934.84 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 589 | $ | 1,905.44 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 593 | $ | 12,461.96 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 595 | $ | 67,261.17 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 598 | $ | 10,648.43 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 608 | $ | 8,278.30 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 612 | $ | 16,858.51 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 615 | $ | 16,617.06 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 619 | $ | 12,761.74 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 620 | $ | 2,152.36 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 621 | $ | 8,459.18 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 625 | $ | 5,387.55 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 628 | $ | 44,641.68 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 636 | $ | 27,313.48 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 641 | $ | 19,892.04 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 648 | $ | 2,414.26 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 649 | $ | 2,414.26 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 653 | $ | 7,048.57 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 655 | $ | 1,241.74 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 658 | $ | 15,521.81 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 660 | $ | 18,898.97 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 662 | $ | 5,173.94 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 664 | $ | 5,173.94 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 672 | $ | 41,391.49 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 675 | $ | 10,761.79 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 678 | $ | 1,034.79 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 684 | $ | 4,539.78 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 685 | $ | 1,350.86 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 686 | $ | 10,347.87 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 691 | $ | 3,104.36 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 698 | $ | 10,600.73 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 700 | $ | 20,695.74 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 702 | $ | 62,087.23 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 711 | $ | 620.87 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 715 | $ | 20,695.74 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 720 | $ | 9,313.09 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 726 | $ | 32,347.45 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 727 | $ | 31,043.62 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 733 | $ | 4,646.23 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 742 | $ | 51,739.36 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 743 | $ | 1,282.92 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 749 | $ | 2,599.39 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 754 | $ | 50.11 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 760 | $ | 1,080.69 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 768 | $ | 14,487.02 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 769 | $ | 8,514.61 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 770 | $ | 9,255.21 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 777 | $ | 1,317.13 |

LINE 9- DECREASES IN FUND BALANCE

STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis
Receivership; Civil Court Case No.  1:2019cv05957
REPORTING PERIOD 10/01/2021 - 12/31/2021

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 779 | $ | 3,621.76 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 780 | $ | 4,997.52 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 797 | $ | 9,090.25 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 799 | $ | 781.27 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 801 | $ | 4,861.52 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 808 | $ | 7,239.37 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 817 | $ | 1,910.38 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 818 | $ | 1,910.38 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 819 | $ | 2,228.17 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 820 | $ | 9,954.65 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 821 | $ | 9,954.65 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 823 | $ | 11,510.44 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 825 | $ | 8,555.08 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 827 | $ | 56,047.57 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 829 | $ | 2,069.57 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 833 | $ | 6,674.22 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 848 | $ | 9,933.96 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 853 | $ | 7,562.08 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 854 | $ | 16,556.60 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 856 | $ | 1,847.10 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 859 | $ | 14,617.63 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 862 | $ | 413.91 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 865 | $ | 5,099.62 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 871 | $ | 51,739.36 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 874 | $ | 8,278.30 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 875 | $ | 1,552.18 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 875 | $ | 1,552.18 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 878 | $ | 1,392.08 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 879 | $ | 26,155.92 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 882 | $ | 3,932.19 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 883 | $ | 2,419.76 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 883 | $ | 2,419.75 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 883 | $ | 2,419.76 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 888 | $ | 24,586.55 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 890 | $ | 27,839.98 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 892 | $ | 4,139.15 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 894 | $ | 8,324.86 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 898 | $ | 42,940.98 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 899 | $ | 1,034.79 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 900 | $ | 36,217.55 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 902 | $ | 6,208.72 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 903 | $ | 5,587.85 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 904 | $ | 19,302.91 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 907 | $ | 25,869.68 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 912 | $ | 20,695.74 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 920 | $ | 11,589.62 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 923 | $ | 9,720.97 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 927 | $ | 13,611.63 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 928 | $ | 532.43 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 931 | $ | 532.43 |

**LINE 9- DECREASES IN FUND BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No. 1:2019cv05957**
**REPORTING PERIOD 10/01/2021 - 12/31/2021**

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 932 | $ | 532.43 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 933 | $ | 532.43 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 934 | $ | 532.43 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 940 | $ | 7,978.22 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 941 | $ | 7,978.22 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 943 | $ | 750.22 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 944 | $ | 750.22 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 954 | $ | 135,189.97 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 956 | $ | 19,783.11 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 958 | $ | 11,833.17 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 960 | $ | 1,279.70 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 961 | $ | 1,552.18 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 964 | $ | 6,152.04 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 966 | $ | 6,208.72 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 973 | $ | 31,043.62 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 975 | $ | 608.45 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 980 | $ | 1,034.79 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 982 | $ | 6,897.89 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 983 | $ | 6,897.89 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 986 | $ | 1,505.71 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 989 | $ | 14,646.73 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 990 | $ | 14,646.73 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No.1001 | $ | 4,951.46 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No.1002 | $ | 4,951.46 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 1003 | $ | 5,101.50 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 1022 | $ | 5,173.94 |
| 12/20/2021 | AXOS BANK | NHRSF | xxx0591 | Second interim distribution to Investor No. 1023 | $ | 9,090.25 |
| 12/22/2021 | AXOS BANK | NHRSF | xxx0591 | Interim Distribution to Investor 852 | $ | 250.25 |
| 12/22/2021 | AXOS BANK | NHRSF | xxx0591 | Second Interim Distribution to Investor 852 | $ | 206.96 |
| 12/28/2021 | AXOS BANK | NHRSF | xxx0591 | Second Interim Distribution to IRA Investors | $ | 203,167.18 |
| 12/29/2021 | AXOS BANK | NHRSF | xxx0591 | Second Interim Distribution to IRA Investors | $ | 1,949,049.01 |
| 12/31/2021 | AXOS BANK | NHRSF | xxx0591 | Second Interim Distribution to IRA Investors | $ | 16,762.54 |
| | | | | | $ | 5,719,949.05 |

**LINES 10-12- DECREASES IN FUND BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No. 1:2019cv05957**
**REPORTING PERIOD 10/01/2021 - 12/31/2021**

**Line 10a - Disbursements to Receiver or Other Professionals**

| Date | Bank Name | Account Name | Account No. | Payee | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| 10/14/2021 | Axos Bank | Northridge Holdings Recievership Settlement Fund (NHRSF) | xxx0591 | KUTCHINS, ROBBINS & DIAMOND, LTD. | April 1, 2021 - June 30, 2021 Fee App | 14,630.00 |
| 10/14/2021 | Axos Bank | NHRSF | xxx0591 | FOX SWIBEL LEVIN & CARROLL LLP | April 1, 2021 - June 30, 2021 Fee App | 138,856.52 |
| 10/14/2021 | Axos Bank | NHRSF | xxx0591 | ALIXPARTNERS LLP | April 1, 2021 - June 30, 2021 Fee App | 19,750.95 |
| 10/14/2021 | Axos Bank | NHRSF | xxx0591 | DICKLER KAHN SLOWIKOWSKI & ZAVELL | April 1, 2021 - June 30, 2021 Fee App | 630.00 |
| 10/14/2021 | Axos Bank | NHRSF | xxx0591 | MILLER KAPLAN ARASE LLP | April 1, 2021 - June 30, 2021 Fee App | 11,784.00 |
| 10/14/2021 | Axos Bank | NHRSF | xxx0591 | ALAP Limited | Payment Pursuant to Fee Application - April 1, 2021 - June 30, 2021 | 4,470.00 |
| 12/22/2021 | Axos Bank | NHRSF | xxx0591 | FOX SWIBEL LEVIN & CARROLL LLP | Payment Pursuant to Fee Application - July 1, 2021 - September 30, 2021 | 112,884.44 |
| 12/22/2021 | Axos Bank | NHRSF | xxx0591 | DICKLER KAHN SLOWIKOWSKI & ZAVELL | Payment Pursuant to Fee Application - July 1, 2021 - September 30, 2021 | 450.00 |
| 12/22/2021 | Axos Bank | NHRSF | xxx0591 | KUTCHINS, ROBBINS & DIAMOND, LTD. | Payment Pursuant to Fee Application - July 1, 2021 - September 30, 2021 | 18,535.00 |
| 12/22/2021 | Axos Bank | NHRSF | xxx0591 | ALIXPARTNERS LLP | Payment Pursuant to Fee Application - July 1, 2021 - September 30, 2021 | 34,312.88 |
| 12/22/2021 | Axos Bank | NHRSF | xxx0591 | MILLER KAPLAN ARASE LLP | Payment Pursuant to Fee Application - July 1, 2021 - September 30, 2021 | 10,310.40 |
| 12/22/2021 | Axos Bank | NHRSF | xxx0591 | ALAP Limited | Payment Pursuant to Fee Application - July 1, 2021 – September 30, 2021 | 12,110.00 |
| | | | | | | 378,724.19 |

**Line 10b - Disbursements for Receivership Operations**

| Date | Bank Name | Account Name | Account No. | Payee | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| 10/8/2021 | Axos Bank | NHRSF | xxx0591 | TOWN SQUARE MANAGEMENT. LT | To enable payment of Employee Wages | 82,258.25 |
| 10/8/2021 | Axos Bank | NHRSF | xxx0591 | NORTHRIDGE HOLDINGS, LTD | To enable payment of Employee Wages | 62,845.49 |
| 12/16/2021 | Axos Bank | NHRSF | xxx0591 | Northridge Holdings Operating Account | To enable payment of property-related expenses Dec-Jan | 77,259.00 |
| | | | | | | 222,362.74 |

**LINES 10-12- DECREASES IN FUND BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No. 1:2019cv05957**
**REPORTING PERIOD 10/01/2021 - 12/31/2021**

**Line 10g - Disbursements for Federal and State Tax Payments**

| Date | Bank Name | Account Name | Account No. | Payee | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| 10/14/2021 | Axos Bank | NHRSF | xxx0591 | Department of the Treasury | 1120-SF US Income Tax Return (2020) 85-2278810 | $ 7,999.00 |
| 10/14/2021 | Axos Bank | NHRSF | xxx0591 | Illinois Department of Revenue | 2020 Form IL-1120 Tax Return 85-2278810 | $ 2,107.00 |
| 11/9/2021 | Axos Bank | NHRSF | xxx0591 | Department of the Treasury | Town Square Management I, Ltd. - 2017 tax return; 36-3856676 | $ 6,387.00 |
| 11/9/2021 | Axos Bank | NHRSF | xxx0591 | Department of the Treasury | Town Square Management I, Ltd. - 2016 tax return; 36-3856676 | $ 3,832.00 |
| 11/9/2021 | Axos Bank | NHRSF | xxx0591 | Illinois Department of Revenue | Town Square Management I, Ltd. - 2016 tax return; 36-3856676 | $ 1,588.00 |
| 11/9/2021 | Axos Bank | NHRSF | xxx0591 | Illinois Department of Revenue | Town Square Management I, Ltd. - 2017 tax return; 36-3856676 | $ 2,954.00 |
| 11/10/2021 | Axos Bank | NHRSF | xxx0591 | Town Square Management LTD | 2018-2020 Tax Payments | $ 39,000.00 |
| | | | | | | $ 63,867.00 |

Decreases in Funds Balance Lines 9-12 $ 6,384,902.98

**Schedule 13.1 - DETAIL OF LINE 13, ENDING BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No. 1:2019cv05957**
**REPORTING PERIOD 10/01/2021 - 12/31/2021**

| Entity | Bank Name | Account Number | As of Date | Balance |
|---|---|---|---|---|
| Amberwood | Axos Bank | ***0153 | 12/31/2021 | $ - |
| Azlan Group, LLC | Axos Bank | ***0161 | 12/31/2021 | $ - |
| Brookstone Investment Group, Ltd | Axos Bank | ***0179 | 12/31/2021 | $ - |
| Cornerstone Limited Partnership | Axos Bank | ***0187 | 12/31/2021 | $ - |
| Eastridge Holdings, Ltd. | Axos Bank | ***0195 | 12/31/2021 | $ - |
| Guardian Investment Group, Ltd. | Axos Bank | ***0203 | 12/31/2021 | $ - |
| Northridge Holdings, Ltd. | Axos Bank | ***0211 | 12/31/2021 | $ - |
| Paragon Group Limited | Axos Bank | ***0229 | 12/31/2021 | $ - |
| Ridgeview Group I | Axos Bank | ***0237 | 12/31/2021 | $ - |
| Southridge Holdings, Ltd. | Axos Bank | ***0245 | 12/31/2021 | $ - |
| Unity Investment Group, Ltd. | Axos Bank | ***0252 | 12/31/2021 | $ - |
| 106 Surrey | Axos Bank | ***0260 | 12/31/2021 | $ - |
| 561 Deere Park | Axos Bank | ***0278 | 12/31/2021 | $ - |
| 610 Lincoln | Axos Bank | ***0286 | 12/31/2021 | $ - |
| Timber Lake Apartments, LLC | Axos Bank | ***0294 | 12/31/2021 | $ - |
| 5097 Elston Limited Partnership | Axos Bank | ***0302 | 12/31/2021 | $ - |
| 5528 Hyde Park Limited Partnership | Axos Bank | ***0310 | 12/31/2021 | $ - |
| 106 Surrey Limited Partnership | Axos Bank | ***0328 | 12/31/2021 | $ - |
| 610 Lincoln Limited Partnership | Axos Bank | ***0336 | 12/31/2021 | $ - |
| G&C Mueller Family Limited Partnership | Axos Bank | ***0344 | 12/31/2021 | $ - |
| 149 Mason Limited Partnership | Axos Bank | ***0351 | 12/31/2021 | $ - |
| Beacon Foundation | Axos Bank | ***0369 | 12/31/2021 | $ - |
| Willow Creek Landscaping LP | Axos Bank | ***0377 | 12/31/2021 | $ - |
| 139 Austin LP | Axos Bank | ***0385 | 12/31/2021 | $ - |
| 149 Mason/Trust #12655 | Axos Bank | ***0393 | 12/31/2021 | $ - |
| Mueller Painting & Decorating | Axos Bank | ***0401 | 12/31/2021 | $ - |
| Ameritrade | Axos Bank | ***0419 | 12/31/2021 | $ - |
| Northridge Holdings Receivership Settlement Fund | Axos Bank | **0591 | 12/31/2021 | $ 24,209,582.37 |
| | | | | $ 24,209,582.37 |

Schedule 14.1-DETAIL LINE 13, 14a,b,c END BALANCE OF FUND-NET ASSETS

STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis
Receivership; Civil Court Case No. 1:2019cv05957
REPORTING PERIOD 10/01/2021 -12/31/2021

**Line 13, 14a - Cash & Cash Equivalents**

Bank                              Balance all accounts as of 12/31/2021

**Line 13**   Axos Bank                                    $ 24,209,582.37

Parkway Bank; First American Bank
**Line 14a**   (operating accounts)                        $     105,411.59

**Total (including Parkway/FAB operating)**  $  24,314,993.96

**Line 14b - Investments**

Real Property Assets of Receivership - value still being determined

**Line 14c - Other Assets or Uncleared Funds**

Other Assets of Receivership - Receiver is investigating

| Account Name | Parkway Account/ (First American Bank) | Parkway Account/ (First American Bank) | Axos Account | Axos Balance |
|---|---|---|---|---|
| Amberwood Holdings | *1756 | $229.97 | *0153 | $ - |
| Timberwood Recreational Center Inc | *1845 | $100.00 | N/A | $ - |
| 5528 Hyde Park LP | *2221 | $548.20 | *0310 | $ - |
| 106 Surrey LP N | *2329 | $1,343.59 | *0328 | $ - |
| 149 Mason LP N | *2337 | $714.86 | *0351 | $ - |
| 610 Lincoln LP N | *2345 | $184.95 | *0336 | $ - |
| 9620 Ivanhoe LP N | *2353 | | N/A | $ - |
| Azlan Group N | *2396 | $369.38 | *0161 | $ - |
| Beechwood Group I LP N | *2418 | | N/A | $ - |
| Brookstone Inv. Group N | *2426 | $692.04 | *0179 | $ - |
| Cornerstone LP N | *2434 | $626.89 | *0187 | $ - |
| Eastridge Holdings Ltd N | *2442 | $210.47 | *0195 | $ - |
| Guardian Inv. Group N | *2450 | $1,894.18 | *0203 | $ - |
| Paragon Group N | *2469 | $137.52 | *0229 | $ - |
| Ridgeview Group I N | *2477 | $272.27 | *0237 | $ - |
| Town Square Mgmt. N | *2485 | $778.85 | N/A | $ - |
| Unity Inv. Group Ltd. N | *2493 | $247.20 | *0252 | $ - |
| Glen Ellyn Court Condo Assoc N | *2507 | | N/A | $ - |
| 106 Surrey/Trust #14029 N | *2515 | $816.73 | *0260 | $ - |
| 441-447 N LSD Dr Townhome Assoc N | *2523 | $5,138.16 | N/A | $ - |
| 480-486 N LSD Dr Townhome Assoc N | *2531 | $12,015.21 | N/A | $ - |
| 5097 Elston LP | *2558 | $127.81 | *0302 | $ - |
| Timberlake Apartments N | *2604 | $7,824.18 | *0294 | $ - |
| 610 Lincoln/Trust #13741 N | *2612 | $1,462.93 | *0286 | $ - |
| 561 Deere Park/Trust #14106 N | *2620 | $1,388.75 | *0278 | $ - |
| Southridge Holdings LTD I | *2639 | $707.09 | *0245 | $ - |
| Northridge Holdings LTD N | *2647 | $51,118.33 | *0211 | $ - |
| G&C Mueller Family LP | *2353 | $9,627.33 | *0344 | $ - |
| Beacon Foundation | *9622 | $555.71 | *0369 | $ - |
| Willow Creek Landscaping LP | N/A | | *0377 | $ - |
| 139 Austin LP | *2701(FAB) | $868.93 | *0385 | $ - |
| 149 Mason/Trust #12655 | *7801(FAB) | $921.98 | *0393 | $ - |
| Mueller Painting & Decorating | *7302(FAB) | $4,488.08 | *0401 | $ - |
| Ameritrade | N/A | $0.00 | *0419 | $ - |
| Northridge Holdings Receivership Settlement Fund | | | *0591 | $ 24,209,582.37 |
| | Total Parkway Bank/ (First American Bank) | $ 105,411.59 | Total Axos Bank | $ 24,209,582.37 |