**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | **Civil Action No. 19-cv-05957** |
| **Plaintiff,** | ) ) ) | |
| **v.** | ) ) | **Hon. Franklin U. Valderrama** |
| **NORTHRIDGE HOLDINGS, LTD., ET AL.,** | ) ) ) | |
| **Defendants.** | ) ) | **Magistrate Judge Susan E. Cox** |

<u>**RECEIVER'S REPORT FOR THE PERIOD OF
JULY 1, 2024 THROUGH SEPTEMBER 30, 2024**</u>

N. Neville Reid, not individually, but solely as the Court-appointed receiver (the "<u>Receiver</u>") for the Estate of Defendant Northridge Holdings, Ltd. ("<u>Northridge</u>") and its related entities and affiliates as more particularly set forth in the Receivership Order (as defined herein) (collectively, the "<u>Receivership Defendants</u>" or "<u>Receivership Entities</u>," and their assets as more particularly identified therein, the "<u>Receivership Assets</u>," and such estate, the "<u>Receivership Estate</u>" or the "<u>Estate</u>," and such administration, the "<u>Receivership</u>"), and pursuant to the requirements of the *Order Appointing Receiver* entered by the Court on September 12, 2019 [Dkt. 22] and as amended by the Court on February 13, 2020 [Dkt. 18; see also Dkt. 102] (the "<u>Receivership Order</u>"),[1] respectfully submits this *Receiver's Twentieth Report* (the "<u>Report</u>") *for the Period of July 1, 2024 through September 30, 2024* (the "<u>Twentieth Reporting Period</u>"). The purpose of this Report is to provide the Court and all interested parties with a description of the nature of the Receiver's activities during the Twentieth Reporting Period.

---

[1] Capitalized terms not defined herein shall be given the same meaning ascribed to such terms in the Receivership Order.

## I.     NINETEENTH AMENDED LIQUIDATION PLAN.

1.     Pursuant to the Receivership Order, the Receiver attaches his Nineteenth Amended Liquidation Plan as **Exhibit A** hereto (the "Nineteenth Amended Liquidation Plan"). [Receivership Order at ¶ 59.]  The Nineteenth Amended Liquidation Plan provides a summary of real property sales and an update on the Receiver's efforts to identify, pursue and settle potential litigation claims, including third-party receivable claims, "finder" claims, "net winner" claims and insider claims.  Accordingly, such information is not repeated in the body of this Report.

## II.    EXECUTIVE SUMMARY.

2.     The following chart contains a summary of the primary outstanding tasks for completing the administration of the Receivership Estate and progress made during the Twentieth Reporting Period[2]:

| Task Description | Task Status |
|---|---|
| Obtaining greater tax finality from the IRS | During the prior reporting periods, the IRS completed its audit of what the Receiver's tax team deems as the four highest priority tax returns (i.e., the returns containing the largest deductions and most critical issues) (collectively, the "Test Returns").  The Receiver has now received "no change letters" regarding all Test Returns.  <br><br>Additionally, during the Twentieth Reporting Period, the Receiver reached out to a different section of the IRS and sought  a comprehensive closing protection letter for all the returns.  The IRS has indicated that it will not issue a closing protection letter.  As a result, the Receiver must rely on the running of relevant statutes of limitation. |
| The Fourth Interim Distribution | During the Twentieth Reporting Period, the Receiver substantially completed the Forth Interim Distribution of $1,351,315.22. |
| The Fifth Interim Distribution | On September 16, 2024, the Receiver filed Receiver's Notice of Fifth Interim Distribution [Dkt. 467]  pursuant to which the Receiver intends to distribute $8,400,000.00.  No objection was  made to this notice and, therefore, the Receiver intends |

---

[2]     Because the IRS audit of the priority tax returns is the most significant ongoing issue in this Receivership, the Receiver provides an update through the date of the filing of this Report.

| | to make this distribution shortly after November 4, 2024 (as set forth in the notice). |
|---|---|
| Plans for Future Distributions | As set forth in the Notice of Fifth Interim Distribution, the Receiver intends to make the following additional distributions (all of which are subject to reduction or may not be made if there are any adverse developments relating to taxes between now and the planned distribution dates): <br><br> • $2.4 million shortly after January 26, 2025; and <br><br> • $2.4 million shortly after May 18, 2025. <br><br> Additional interim distributions and any final distribution are still to be determined by the Receiver in consultation with his tax professionals. |
| Resolving insider claims | The Receiver is working in good faith with opposing counsel to settle claims against and asserted by Mr. and/or Mrs. Mueller (subject to SEC and Court-approval). Resolution of the tax issues, however, has impact here. |
| General wind-up of operations and the Receivership | The Receiver continues efforts to wind down the estate pending completion of the outstanding tasks set forth herein. |

## III.    REAL PROPERTY ASSETS

### a.  Management of Real Property Assets Generally.

3.      In prior reporting periods, as set forth in prior Receiver Reports, all the Receivership Estate's substantial Real Property Assets were sold and now, all of the Receivership Estate's Real Property Assets have been sold.

4.      Matters specific to each of the Real Property Assets are as follows:

3

### b. Sales Closed

5. As set forth in the Nineteenth Amended Liquidation Plan, the following real properties were sold and closed in prior reporting periods:

- The **Chablis Property** sale closed on September 20, 2019, and the Estate received (a) **$3,882,611** in net proceeds from that sale; and (b) **$82,000.00** in escrow return post-closing;

- The **Palatine Property** sale closed on February 10, 2020, and the Estate received **$129,420.28** in net proceeds from that sale;

- The **Bartlett Lake Property** sale closed on June 24, 2020, and the Estate received (a) **$7,810,079.26** in net proceeds from that sale; (b) **$230,029.20** in escrow return post-closing; and (c) approximately **$34,000.00** for post-closing rental collections and pro-rations;

- The **Surrey Property** sale closed on July 24, 2020, and the Estate received **$2,039,766.16** in net proceeds from that sale.

- The **Elston Property** sale closed on October 19, 2020, but this was a "short" sale, and the Estate did not receive proceeds at closing. However, the secured lender's deficiency claim was minimized due to the Receiver's sale efforts. The lender's asserted deficiency claim is $13,821.97;

- The **Miami Property** sale closed on November 17, 2020, and the Estate received **$178,847.12** in net proceeds from that sale;

- The **Timber Lake Property** sale closed on December 9, 2020, and the Estate received (a) **$27,299,163.97** in net proceeds from that sale; and (b) **$928,064.51** in escrow return post-closing; and

- The **Vacant Lots Property** sale closed on January 11, 2022, and the Estate received **$22,782.13** in net proceeds from that sale.

### c. Real Property Asset Operations During the Twentieth Reporting Period.

6. For certain of the Real Property Assets that closed in prior reporting periods, some post-closing activity was required. Additionally, some expenses and operations are run through the main Northridge Holdings, Ltd. entity and through the Amberwood entity. An accounting of that activity is attached hereto as group **Exhibit B**.

## IV.    OTHER ASSETS.

7.     As more fully set forth in the Nineteenth Amended Liquidation Plan, the Receivership Estate has identified potential assets that are not real property assets.  Such assets are comprised primarily of: (a) shares of a penny stock; (b) a term life insurance policy on Mueller; (c) rights to sale proceeds of a home located at 22W371 Emerson Avenue, Glen Ellyn, Illinois 60137 (the "Glen Ellyn Property"); and (d) various potential litigation claims.

8.     During prior Reporting Periods, the Receiver worked with the SEC in connection with the assertion of insider claims and potential settlement of the same.  The Receiver and counsel for Mr. Mueller and certain related persons and parties have been and will continue to work toward final resolution and settlement.  Such resolution, however, will be dependent on the final distribution amounts to investors.

## V.    BUSINESS OPERATION AND PRESERVATION OF BOOKS AND RECORDS.

9.     Business operations during the Twentieth Reporting Period are described above. With respect to preservation of books and records, there is no update since the last report.

## VI.    BANK AND INVESTMENT ACCOUNTS.

10.     The Receiver continues to use a combination of pre-Receivership and post-Receivership accounts.  Now that most of the operating assets have been sold and the Court has approved the "pooling" of assets to pay all claimants, the Receiver has closed and consolidated accounts.  The Receiver has consolidated many of the Receivership accounts into one primary account at Axos Bank.  As set forth in a prior report, this account at Axos Bank is now administered under Axos Bank's Insured Cash Sweep program that ensures the Receivership's funds are all FDIC insured.  The Receiver continues to use Receivership accounts to collect liquid assets of the

Receivership Estate and to pay the administrative and other ordinary course expenses of the Receivership Estate.

## VII.   CASH, ADMINISTRATIVE EXPENSES, UNENCUMBERED FUNDS, AND RECEIPTS AND DISBURSEMENTS

11.     The Receiver's Standardized Fund Accounting Report ("SFAR") for the Twentieth Reporting Period is attached hereto as **Exhibit C**.  The SFAR sets forth certain funds received by and disbursed from the Receivership Estate during the Twentieth Reporting Period.  As reported in the SFAR, the amount of cash on hand in the Receivership Accounts (in the Receivership Estate) as of September 30, 2024 was **$19,452,037.15**.  The information set forth in the SFAR is based upon information and records available to the Receiver as of the date of this Report.

12.     The Operating Accounts had a collective balance of  $35,409.89 as of September 30, 2024.

13.     Collectively, the Receivership Estate had approximately **$19,487,447.04** of cash on hand as of September 30, 2024.

14.     The approximate amount of administrative expenses incurred during the Twentieth Reporting Period is summarized as follows[3]:

| Professional | Month/Year | Fees & Costs Incurred |
| --- | --- | --- |
| Fox Swibel | July – September 2024 | $30,308.29 |
| AlixPartners | July – September 2024 | $62,095.00 |
| Dickler Kahn | July – September 2024 | $180.00 |
| KRD | July – September 2024 | $3,852.50 |
| ALAP | July – September 2024 | $1,740.00 |
| Plante Moran | July – September 2024 | $0.00 |

---

[3]     The Receiver is in the process of reviewing all professionals' invoices, and thus the fees and costs stated herein are subject to modification/reduction.  All finalized fees and costs of professionals approved by the Receiver will be set forth in the forthcoming fee application covering the Twentieth Reporting Period.

| Miller Kaplan | July – September 2024 | $0.00 |
| Chapman & Chapman | July – September 2024 | $0.00 |
| **Total** | | **$98,175.79** |

## VIII.    WORK PERFORMED BY PROFESSIONALS

### a.  Fox Swibel.

15.    Fox Swibel's work during the Twentieth Reporting Period related primarily to the following:

a.    Assisting the Receiver with all tasks related to complying with the Court's previous order relating to distributions and resolving all investor issues relating to the prior approved investor distributions;

b.    Continuing work relating to seeking to obtain certainty/finality as to the federal and state taxes owed/paid by the Receivership Entities;

c.    Completing the Fourth Interim Distribution and resolving related issues;

d.    Analysis of future distribution amounts and timing; and

e.    Monitoring the Investor hotline to more cost efficiently respond to Investor questions and issues.  Fox Swibel, pursuant to SEC billing guidelines, does not bill for routine Investor inquiries.

### b.  Forensic Accountant.

16.    During the Twentieth Reporting Period, AlixPartners LLP ("AlixPartners"), the Receiver's forensic accountant assisted with completing the Fourth Interim Distribution and confirmation of all investor information in connection with same.  Additionally, AlixPartners assisted with analysis as to the upcoming Fifth Interim Distribution.  Both involved substantial work because: (a) investor information had to be re-confirmed as a distribution had not been made for some time; (b) investors had unfortunately passed away and details with where the money was to be paid had to be worked out; and (c) many investors sent the Receiver letters-of-direction setting forth a new place to send payment.  AlixPartners, continues to keep the Receivership

Website (www.northridgereceiver.alixpartners.com) up to date. These efforts facilitated efficient, cost-effective responses to Investors' questions.

### c. Tax Accountant, Forensic Tax Accountant and Tax Consultant.

17.     During the Twentieth Reporting Period, Kutchins, Robbins & Diamond Ltd. ("KRD") continued to provide accounting, tax, payroll, and related services for the Receivership and the Receivership Defendants, including work related to tax issues related to the Court-approved investor distributions and seeking finality from the IRS on tax issues.

18.     During the Twentieth Reporting Period, ALAP Limited ("ALAP") assisted KRD in providing accounting, tax, and related services for the Receivership and the Receivership Defendants, including work related to tax issues related to the Court-approved investor distributions and seeking finality from the IRS on tax issues.

19.     During the Twentieth Reporting Period, no services were provided by Miller Kaplan Arase LLP ("Miller Kaplan").

20.     During the Twentieth Reporting Period, no services were provided by Plante Moran, PLLC.

### D. Condominium Association Counsel.

21.     During the Twentieth Reporting Period, Dickler, Kahn, Slowikowski, & Zavell, Ltd. assisted the Receiver with finalizing the transition of the association related to the Palatine Property sale.

### E. North Dakota Counsel.

22.     During the Twentieth Reporting Period, no services were provided by Chapman & Chapman.

5096947 v1 - 07183 / 001

## IX.     COMMUNICATIONS WITH INVESTORS.

23.     During the Twentieth Reporting Period, the Receiver has primarily communicated with Investors through: (a) the northridgereceiver.alixpartners.com website; (b) the Investor hotline now monitored by Fox Swibel; and (c) the Receiver and his legal team's direct communication with Investors, much of which was related to the Court-ordered distributions (e.g. updating their information and payment instructions for the current distributions) and case status generally. All calls were responded to (and the Receiver and his legal team are not charging for this time in accordance with the SEC's Billing Instructions unless the call is with respect to substantive claims resolution and/or Distribution Plan and/or Fourth Interim Distribution related issues). With respect to the website, it has been continually updated throughout the Twentieth Reporting Period.

## X.     LIABILITIES/INVESTOR CLAIMS.

24.     As set forth above, in conjunction with the claims process, the Receiver has completed his investigation regarding the existence and nature of potential liability and Investor claims. Based on the analysis performed to date, such Investor claims are generally as described in the SEC's *Emergency Motion for a Temporary Restraining Order to Prevent Violations of the Federal Securities Laws, to Appoint a Receiver, and Provide for Other Ancillary Relief* [Dkt. 3].

25.     To date, based on work performed prior reporting periods and the passing of the relevant Bar Date, the amount of claims against the receivership which the Receiver presently does not have objection to is approximately $41,874,000.00. Additionally, one claim in the amount of approximately $170,000.00 is presently in dispute. As a result, the Receiver presently estimates the non-administrative claims against the Receivership Estate to be between $41,874,000.00 and $42,089,000.00.

## XI.    LIQUIDATED AND UNLIQUIDATED CLAIMS

26.    The Receiver's investigation of liquidated and unliquidated claims is ongoing.

## XII.    OPEN LITIGATION

27.    As of the end of the Twentieth Reporting Period, no open litigation exists.

## XIII.    RECEIVERSHIP ASSET DESCRIPTION

28.    The assets of the Receivership Estate are described in the attached Nineteenth Amended Liquidation Plan which in turn includes descriptions of anticipated and/or proposed dispositions of such assets.  At this time, the Receiver anticipates liquidating substantially all of the Receivership Assets.  With respect to any assets that have no net benefit to the Estate, the Receiver intends to seek Court-approval to abandon them.  Therefore, no assets are expected to be retained.

## XIV.    KNOWN CREDITORS

29.    Now that the Bar Date has passed, the creditor body is fully known and is described above and in the previously filed Distribution Plan Motion.

## XV.    STATUS OF CREDITOR CLAIMS PROCEEDINGS

30.    The Bar Date has passed, and the creditor body is known as set forth above.

31.    As of this filing, there is one unresolved claim dispute (Mrs. Mueller) which the Receiver is seeking to resolve via settlement.

## XVI.    RECOMMENDATION FOR CONTINUATION OF RECEIVERSHIP

32.    In order to ensure the orderly liquidation of the Receivership Estate and equitable distribution of the funds obtained from such liquidation, the Receiver recommends that the Receivership continue.

Dated:  October 29, 2024                    Respectfully submitted,


N. Neville Reid, Receiver

By: /s/ *Ryan T. Schultz*              

N. Neville Reid
Ryan T. Schultz
Kenneth M. Thomas
Fox Swibel Levin & Carroll LLP
200 West Madison Street, Suite 3000
Chicago, IL 60606
Tel: 312.224.1200
Fax: 312.224.1201
nreid@foxswibel.com
rschultz@foxswibel.com
kthomas@foxswibel.com

*General Counsel to the Receiver*

11

# EXHIBIT A

## (Nineteenth Amended Liquidation Plan)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | **Civil Action No. 19-cv-05957** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Hon. Franklin U. Valderrama** |
| **NORTHRIDGE HOLDINGS, LTD., ET AL.,** | ) ) ) | |
| **Defendants.** | ) ) | **Magistrate Judge Susan E. Cox** |

<u>**RECEIVER'S NINETEENTH AMENDED LIQUIDATION PLAN**</u>

N. Neville Reid, not individually, but solely as the Court-appointed receiver (the "<u>Receiver</u>") for the Estate of Defendant Northridge Holdings, Ltd. ("<u>Northridge</u>") and its related entities and affiliates as more particularly set forth in the Receivership Order (as defined herein) (collectively, the "<u>Receivership Defendants</u>," and their assets as more particularly identified therein, the "<u>Receivership Assets</u>," and such estate, the "<u>Receivership Estate</u>," and such administration, the "<u>Receivership</u>"), and pursuant to the powers vested in him by the *Order Appointing Receiver* entered by the Court on September 12, 2019 [Dkt. 22], as amended by the Court on February 13, 2020 [Dkt. 108; see also Dkt. 102] (the "<u>Receivership Order</u>"),[1] respectfully submits this *Nineteenth Amended Liquidation Plan* (the "<u>Liquidation Plan</u>").

**I.    COVID-19 IMPACT**

1.    As set forth more fully below, the unprecedented COVID-19 crisis impacted the Receiver's operation and liquidation of the Receivership Assets but did not prevent the closing of the sale of nearly all of the real estate holdings of the estate, yielding substantial net proceeds

---

[1]    Capitalized terms not defined herein shall be given the same meaning ascribed to such terms in the Receivership Order.

totaling nearly $40 million.

## II.    REAL ESTATE ASSETS

2.      The Receivership Assets included the following real estate (collectively, the "Real Estate Assets"):  (a) a 96-unit apartment building located in Addison, Illinois (the "Chablis Property"); (b) a 576-unit apartment building located in West Chicago, Illinois (the "Timber Lake Property"); (c) a 192-apartment complex located in Bartlett, Illinois (the "Bartlett Lake Property"); (d) 48 condominiums located at 106 Surrey, Glen Ellyn, Illinois (the "Surrey Property"); (e) an office building located at 5097 N. Elston, Chicago, Illinois (the "Elston Property"); (f) a condominium unit located in Palatine, Illinois (the "Palatine Property"); (g) a condominium located at 3470 E. Coast Avenue, Unit #1003, Miami, Florida 33137 (the "Miami Property"); and (h) 36 vacant residential lots located near Palms Springs, California (the "Vacant Lots Property").

3.      As part of the marketing and sales process for the Real Estate Assets (subject to sale orders), the Receiver sought professional guidance in order to maximize the value of the Real Estate Assets.  With respect to each Real Estate Asset, the details of each sale follows:

### a.  Chablis Property (Sale Closed).

4.      The Receivership Order authorized Defendant Glenn C. Mueller ("Mueller") to consummate a pending sale of the Chablis Property.  [Dkt. 22, ¶ 40.]  The Chablis Property closing occurred on September 20, 2019.  In connection therewith, the Receiver (a) reviewed closing documents to ensure compliance with the Receivership Order; (b) ensured proper payment of the outstanding mortgage loan balance encumbering the Chablis Property; and (c) secured receipt of the remaining proceeds into the Receivership Estate.  [*Id.* at ¶¶ 40(h)-(j).]  The Receivership Estate was paid **$3,882,611.02** at closing.[2]

---

[2]      With respect to all of the Real Estate Assets, the Receiver is still investigating the tax treatment of sales of the same and is working with his accountants to minimize any tax burden.  As a result, all amounts realized or

5.      Soon after the closing, the Receiver determined that the mortgage lender had failed to timely turn over a mortgage loan overpayment and tax escrow balance to the Receiver. Accordingly, the Receiver made a demand for turnover of the same and subsequently filed a *Motion to Enforce Receivership Order and For Entry of an Order Compelling J.P. Morgan Chase Bank, N.A. to Account for and Turn Over Receivership Assets to the Receiver* (the "Turnover Motion").  [Dkt. 53.]  The Receiver and mortgage lender subsequently resolved the Turnover Motion consensually, resulting in the Receiver's recovery of an additional (approximately) **$82,000.00** into the Receivership Estate.

### b.  Bartlett Lake Property (Sale Closed).

6.      The Receiver engaged Essex Realty Group, Inc. ("Essex") as real estate broker for the Bartlett Lake Property.  [See Dkt. 62.]  Additionally, the Receiver sought and obtained Court approval for sale procedures for the Bartlett Lake Property.  [See Dkts. 72, 92.]  On February 27, 2020, the Receiver filed his *Motion to Authorize Sale of Real Estate and Related Relief (Bartlett Property)* (the "Bartlett Sale Motion").  [Dkt. 110.]  The Bartlett Sale Motion sought approval of the sale of the Bartlett Lake Property to Monument Capital Management IV, LLC, an affiliate of Monument Capital Management (the "Bartlett Buyer"), for a purchase price of $19.3 million. Approval of the Bartlett Sale Motion was delayed due to Mueller's assertion of a potential objection and the COVID-19 crisis.  The objection was resolved consensually.  On March 31, 2020, the Court entered an order approving the sale (the "Bartlett Sale Order").  [Dkt. 131.]  Under the relevant agreement, the sale was required to close on or before May 7, 2020.[3]

7.      In the weeks immediately following entry of the Bartlett Sale Order, the COVID-

---

estimated at closings are in pre-tax dollars.

[3]      Under the executed contract, the buyer retained the option to extend the closing date by posting additional non-refundable earnest money.

3

19 crisis worsened, thereby negatively impacting, among other things, residential real estate values. As a result, the Bartlett Buyer requested certain concessions from the Receiver, including a purchase price reduction. The Receiver determined in his business judgment that preserving the transaction through a reasonable price reduction outweighed – and protected against – the risk and uncertainty of navigating a renewed marketing and sale process amidst the pandemic. Accordingly, the Receiver filed a motion seeking (i) approval of the sale to the Bartlett Buyer at a reduced purchase price ($17.8 million) and (ii) related relief. [Dkt. 143.] On May 19, 2020, the Court entered an order approving the sale of the Bartlett Lake Property at the reduced purchase price. [Dkt. 147.]

8.      On June 24, 2020, the sale of the Bartlett Lake Property closed. At closing, after payment of all encumbrances and closing costs (secured lender, commissions, etc.), the Receivership Estate realized **$7,810,079.26** in net proceeds from the sale of the Bartlett Lake Property. Shortly after closing, the lender for the Bartlett Lake Property refunded to the Receivership Estate **$230,029.20** in tax, insurance and reserve escrows. Post-closing, the Receiver received approximately **$34,000.00** relating to post-closing rental collections and pro-rations.

### c. Surrey Property (Sale Closed).

9.      The Receiver engaged 33 Realty as real estate broker for the Surrey Property. On December 10, 2019, the Receiver filed his *Motion for Court Approval of: (A) Rates to be Charged by Receiver's Real Estate Broker (Surrey Property) and (B) Sales Procedures (Surrey Property)*. [See Dkt. 82.] On January 6, 2020, the Court granted this motion. [Dkt. 93.]

10.      After completion of the marketing process, the Receiver selected an offer with which to proceed. On April 28, 2020, the Receiver filed his *Motion (1) to Authorize Sale of Real Estate and Related Relief (Surrey Property) and (2) For Partial Relief from the Court's COVID-*

*19 Order* (the "Surrey Sale Motion"). [Dkt. 138.] The Surrey Sale Motion sought approval of the sale of the Surrey Property to Wildwood Property Ventures, LLC (the "Surrey Buyer") for a purchase price of $5.7 million.[4] In the interest of efficiently closing the transaction during the COVID-19 crisis and related market uncertainty, the Receiver filed the Surrey Sale Motion while due diligence remained pending and the Surrey Buyer's financing contingency remained outstanding (i.e., the Receiver filed the Surrey Sale Motion so that any objection period and the due diligence/contingency period would run concurrently).

11.     During due diligence, the Surrey Buyer identified certain issues with the Surrey Property, and the COVID-19 crisis continued to harm the real estate market. As a result, the Surrey Buyer requested a modest purchase price reduction. After good faith negotiations between the parties, the Receiver agreed to reduce the purchase from $5.7 million to $5.425 million in exchange for the Surrey Buyer's agreement to solidify the certainty of the transaction by (a) increasing its earnest money deposit from $100,000 to $400,000, and (b) waiving any outstanding due diligence and financing contingencies.

12.     On May 29, 2020, the Receiver simultaneously filed a motion to withdraw the Surrey Sale Motion [Dkt. 153] and an amended motion for approval of the sale of the Surrey Property (the "Amended Surrey Sale Motion"). [Dkts. 152, 153.] The Amended Surrey Sale Motion sought approval of the sale of the Surrey Property to the Surrey buyer at the reduced purchase price. On June 2, 2020, the Court granted the Receiver's request to withdraw the Surrey Sale Motion. [Dkt. 155.] After the expiration of the relevant objection period, on June 17, 2020, the Court granted the Amended Surrey Sale Motion. [Dkt. 158.]

---

[4]      In a prior version of the Receiver's Liquidation Plan, the Receiver stated that he had obtained a broker opinion of value in excess of $8 million. That valuation, however, was for all sixty (60) units – of which the Receivership Estate owned just forty-eight (48) – and was completed prior to the COVID-19 crisis.

13.     On July 24, 2020, the sale of the Surrey Property closed.  At closing, after payment of all encumbrances and closing costs (secured lender, commissions, etc.), the Receivership Estate received **$2,039,766.16** in net proceeds from the sale of the Surrey Property.[5]

   **d.  Timber Lake Property (Sale Closed).**

14.     In order to maximize the value of the Timber Lake Property, the Receiver's professionals recommended completing the then-pending parking lot expansion (to increase occupancy) and securing additional tenants to rent vacant units (to demonstrate demand to potential buyers) in advance of marketing the Timber Lake Property for sale.  Both of these recommended steps were completed.

15.     In order to select a broker for the Timber Lake Property, the Receiver solicited broker proposals from five reputable local and national brokers, conducted interviews of such brokers and checked their references.  After completion of this competitive process, the Receiver selected CBRE, Inc. ("CBRE") as broker.  The Receiver then sought and received the Court's approval of the commission rate to be paid to the CBRE and the sales procedures for the Timber Lake Property.  [See Dkts. 112 and 156.]

16.     On September 22, 2020, the Receiver filed a motion seeking authority to sell the Timber Lake Property and related relief (the "Timber Lake Sale Motion").  [See Dkt. No. 183.] In summary, the Timber Lake Sale Motion: (a) sought authority to sell the Timber Lake Property to TMIF II Timber Lake LLC, an affiliate of Turner Impact Capital for $50.25 million; (b) described the marketing process for the Timber Lake Property and the Receiver's selection of the buyer; (c) sought authority to pay the relevant secured lender; and (d) sought to add as a receivership entity Timberwood Recreational Center, Inc., a fee owner of certain parcels of the

---

[5]     Here, the secured lender applied all escrow balances to reduce the loan balance to be paid at closing.

Timber Lake Property. Mueller filed an objection to the Timber Lake Sale Motion asserting that more time should be given to another potential buyer that expressed interest in purchasing the Timber Lake Property for a higher price. After a hearing on the matter, the Court denied Mueller's objection, approved the sale of the Timber Lake Property and entered orders relating to the same. [See Dkt. Nos. 209, 214, 215.]

17.     This sale closed on December 9, 2020, and the Estate received (a) **$27,299,163.97** in net proceeds from that sale; and (b) **$928,064.51**[6] in escrow return post-closing. The Receiver has also collected funds for post-closing rent prorations and real estate tax reprorations as set forth in the relevant purchase agreement.

### e. Elston Property (Sale Closed).

18.     The Receiver engaged Millennium Properties R/E, Inc. ("MPI") as real estate broker for the Elston Property. On January 17, 2020, the Receiver filed his *Motion for Court Approval of (A) Rates to be Charged by Receiver's Real Estate Broker (Elston Property); (B) Sales Procedures (Elston Property); (C) Rates to be Charged by Receiver's Real Estate Broker (Vacant Lots Property); and (D) Sales Procedures (Vacant Lots Property)*. [See Dkt. 96.] On February 7, 2020, the Court granted this motion. [See Dkt. 106.] Pursuant to the sale procedures, MPI marketed the Elston Property for auction, which auction was to be held on March 19, 2020. Due to the onset of the COVID-19 crisis the week of the auction, the auction was postponed.

19.     During the continued marketing of the Elston Property, it became clear that a significant recovery was not likely with respect to this property. As a result, the Receiver sought to sell the Elston Property at the highest price in order to limit the claim the bank would have

---

[6]      Total escrow funds on hand as of closing were $929,064.51. However, the lender identified a $1,000.00 charge that was mistakenly omitted from the lender's payoff letter and the Receiver agreed to allow the lender to offset this amount from the escrow funds.

against the Receivership Estate and minimize potential dilution of recovery for the investors.

20.     A buyer was located, and the Receiver sought and obtained court approval of the sale of the Elston Property for $650,000.00.  [See Dkt. Nos. 166, 178.]  This sale closed on October 19, 2020.  This sale did not result in proceeds for the Receivership Estate, but limited the bank's deficiency claim to $13,821.97.

### f.   Miami Property (Sale Closed).

21.     The Receiver engaged LG Realty Group, Inc. ("LG") to broker the Miami Property. LG marketed and solicited offers for the Miami Property for the Receiver's review and consideration.  LG received offers in the $220,000-$235,000 range. The Receiver was finalizing an offer to purchase when the COVID-19 crisis started, and the pandemic ultimately prevented consummation of the transaction.  As such, the Receiver was forced to continue to market this property, but the COVID-19 crisis impacted the marketing of the property because access to this condominium building was materially restricted.

22.     On or about August 28, 2020, the Receiver received a $198,000.00 all-cash offer with no financial contingencies.   After negotiation and execution of a real estate contract, the Receiver sought and obtained court approval of the sale.  [See Dkt. Nos. 180, 201.]  This sale closed on November 17, 2020, and the Estate received **$178,847.12** in net proceeds from that sale.

### g.  Palatine Property (Sale Closed).

23.     The Receivership owned a condominium unit located at 486 Lake Shore Drive, Palatine, Illinois 60067, Unit 486 (the "Palatine Property").   There have been no renters or operations with respect to the Palatine Property during the Receivership.

24.     The Receiver sought and obtained authority to sell the Palatine Property for $145,000.  [See Dkts. 88, 92.]  Closing occurred on February 10, 2020.  There was no mortgage

on this property, and, after payment of closing costs, the Receiver received **$129,420.28** for the Estate.

### h. Vacant Lots Property (Sale Closed).

25.     The Receiver engaged First Team Real Estate ("<u>First Team</u>") as real estate broker for the Vacant Lots Property.  On January 17, 2020, the Receiver filed his *Motion for Court Approval of (A) Rates to be Charged by Receiver's Real Estate Broker (Elston Property); (B) Sales Procedures (Elston Property); (C) Rates to be Charged by Receiver's Real Estate Broker (Vacant Lots Property); (D) Sales Procedures (Vacant Lots Property)*, which was granted by the Court. [See Dkt. Nos. 96, 106.]  Pursuant to the proposed sales procedures, First Team was marketing the Vacant Lots Property and procured an offer for $36,000.00.  On August 6, 2021, the Receiver filed his *Motion to Authorize Sale of Real Estate (California Vacant Lots) and For Related Relief* (the "Vacant Lots Sale Motion"). [Dkt. No. 276] On August 27, 2021, the Vacant Lots Sale Motion was granted an order approving same entered. [Dkt. No. 284]

26.     Closing occurred on January 11, 2022.  There was no mortgage on this property, and, after payment of closing costs, the Receiver received **$22,782.13** for the Estate.

## III.   OTHER ASSETS

### a. Securities Assets.

27.     The Receivership Estate includes approximately 412,190 shares of stock in The Wellness Center USA, Inc. ("WCUI" and such shares the "Shares"), through the Charles Schwab brokerage firm.  The price per share as of December 31, 2023, was approximately $0.0004.  While various creditors and insiders of the Northridge Entities claim ownership of the Shares, based on the advice of counsel and his financial consultants the Receiver has concluded that the WCUI shares should be treated and liquidated like any other asset of the receivership estate, with the

proceeds distributed to investors in accordance with a court-approved distribution plan. The Receiver filed a motion seeking authority to sell the Shares, which was granted by the Court. [*See* Dkt Nos. 267, 270.]

28.     As of this filing, the Shares have sold for a collective sale price of $9,554.96. The Receiver, with the assistance of the Charles Schwab brokerage firm, continued to seek to liquidate the remaining Shares. Approximately 412,190 Shares remain unsold. Given the ongoing relative low valuation of the Shares, the administrative cost of monitoring their value and the closer proximity of the conclusion of the receivership case, the Receiver is evaluating the merits of abandoning the Shares back to the Receivership Defendants in the near future.

### b. Glen Ellyn Property.

29.     The Receiver asserted an interest in a house located at 22W371 Emerson Avenue, Glen Ellyn, Illinois 60137 (the "<u>Glen Ellyn Property</u>"). The Glen Ellyn Property was owned by Bruce and Cheryl Swift (together, the "<u>Swifts</u>"), acquaintances of Mueller (the Swifts are also investors in the Receivership Entities). Regarding the pre-Receivership arrangement, in or about June 2008, Northridge paid the Swifts $70,000 for the right to rent out the Glen Ellyn Property and keep all related rental proceeds. Under this agreement, Northridge paid all expenses associated with the Glen Ellyn Property and kept all of the rents. Upon sale, the proceeds were to be split between the parties. While the deal seems to have been amended at times (both orally and possibly in writing), the essential terms of the deal have remained the same. The Receiver negotiated with the Swifts' attorney to (a) place the Glen Ellyn Property on the market for sale; (b) share in some of the carrying costs; and (c) come to a settlement with respect to the division of the proceeds of a sale of the property. The Swifts were then paying the carrying costs on the property (Northridge was doing so pre-Receivership). The Receiver sought and received Court approval of this

settlement.  [*See* Dkt. Nos. 134, 149.]

30.    The sale of the Glen Ellyn Property closed on August 17, 2020 for $269,900.00. The Receivership has received **$18,188.76** pursuant to the settlement with the Swifts.

### c.  Rocky Ridge L.P.

31.    Mueller owns a 50% interest in Rocky Ridge L.P. which, in turn, is the fee owner of a large piece of vacant real estate in North Dakota (the "North Dakota Property").  The Receiver negotiated with Mueller and his legal team to sell the property with proceeds escrowed subject to further order of the Court. (Mueller's brother, Dale, also owns a percentage of this property either directly or indirectly through entity ownership.)  The Receiver settled with Dale Mueller and Glenn Mueller pursuant to which the non-homestead part of the North Dakota Property (approximately 105 acres) would be sold to a buyer approved by the Receiver, and all of the proceeds of such sale (less commission and other closing costs and certain pre-closing costs to maintain the property) would be remitted to the estate and applied to future distributions. This settlement was approved by the Court.  [Dkt. 360]  The North Dakota Property (the portion subject to the settlement) was listed for sale and the Receiver accepted an offer for $308,910.00.  This sale has been approved by the Court.  (Dkt. Nos. 377, 382, 384).  The sale closed on February 13, 2024 and the Receivership received **$286,308.85** in net proceeds from the sale.

### d.  Life Insurance.

32.    Receivership Defendant Amberwood Holdings Limited Partnership purchased a key man term life insurance policy on Mueller in the amount of $5,000,000.00 (as the death benefit).  The policy is a term policy so it has no current cash value.   The monthly premium is approximately $3,000, which the Receiver has confirmed is an excellent rate for someone of Mueller's age (75).   Based on the Receiver's further consultation with insurance market experts

and brokers, it did not appear at this time that the policy has any material market value in part because of how the policy is structured. The Receiver identified two potential purchasers of the policy. Both signed NDA's and reviewed due diligence. Neither made an offer. The Receiver is continuing to evaluate all options related to the policy, including whether it can or should be sold, assigned to a trust for the benefit of the applicable creditors of the Receivership, or abandoned.

       **e. Litigation Claims.**

33. The Receiver has identified potential litigation targets that can primarily be summarized as follows: (a) claims to recover receivables of the Receivership Defendants; (b) claims against "finders" to recover fees/commissions paid for sourcing investments in the Receivership Defendants; (c) claims against "net-winners" for amounts paid to investors over and above the cash that such investors put into the Receivership Defendants; and (d) numerous claims against the insiders of the Receivership Defendants. The Receiver also sought and received authority for settlement procedures with respect to settling claims valued at less than $1 million. [See Dkt. Nos. 175, 191.]

34. With respect to the receivable claims, the Receiver has settled all viable claims.

35. With respect to the "finder" claims, the Receiver has settled all viable claims.

36. With respect to the "net winner" claims, the Receiver has settled all viable claims.

37. As of the date hereof, the Receiver has negotiated settlements for receivable, "finder" and "net-winner" claims collectively totaling (1) approximately $610,000.00 in cash and (2) approximately $676,000.00 in claim reductions — amounting to a total benefit to the Estate of approximately $1,286,000.00. The Receiver believes he has collected substantially all of the remaining receivable, "finder" and "net-winner" claims.

38. With respect to claims against insiders, the Receiver has sent demand letters and is

working with the SEC to identify and quantify these claims.  Settlement discussions are ongoing.

### f.  Tax Refunds.

39.     The Receiver's tax professionals have completed all outstanding tax returns.  All are filed or will soon be filed. Presently, the Receiver estimates that the Receivership Entities are entitled to approximately $430,000.00 in tax refunds, which the Estate has already received.  These refunds relate to amounts paid the Illinois Department of Revenue on behalf of out-of-state investors as required by Illinois law.  While the Receiver originally believed such payments were necessary, the Receiver's filed returns and amended returns that assert no taxable gain.

40.     As set forth in the Receiver's Distribution Plan Motion (See Dkt. No. 272) and the Order Granting Receiver's Motion for an Order Approving Distribution Plan and Certain Other Related Relief (the "Distribution Plan Order" or "DPO") (Dkt. No. 288), the Receiver was authorized and in fact did deduct the amount of taxes paid on behalf of each relevant Investor from such Investor's first interim distribution.  These refunds are subject to a Motion filed by the Receiver to reserve these refunds for the benefit of out-of-state investors as their distributions have been reduced to account for these payments.  See Dkt. Nos. 306, 313.

### g. Investigation Complete.

41.    The Receiver does not believe there will be any additional material recovery from assets and claims that may constitute Receivership Assets.


Dated:  October 29, 2024                          Respectfully submitted,


                                                  N. Neville Reid, Receiver

                                                  By: /s/ *Ryan T. Schultz*                          _

                                                  N. Neville Reid
                                                  Ryan T. Schultz
                                                  Kenneth M. Thomas
                                                  Fox Swibel Levin & Carroll LLP
                                                  200 West Madison Street, Suite 3000
                                                  Chicago, IL 60606
                                                  Tel: 312.224.1200
                                                  Fax: 312.224.1201
                                                  nreid@foxswibel.com
                                                  rschultz @foxswibel.com
                                                  kthomas@foxswibel.com

                                                  *General Counsel to the Receiver*

**EXHIBIT B**

**(Group Exhibit – Operating Entity Financials)**

Case: 1:19-cv-05957 Document #: 474 Filed: 10/23/24 Page 28 of 46 PageID #:7499

# Northridge Holdings, LTD.
# Profit & Loss
## July through September 2024

|  | Jul - Sep 24 |
|---|---|
| **Ordinary Income/Expense** | |
| **Expense** | |
| Alarm System | 162.81 |
| Bank Service Charges | 225.00 |
| Computer Software | 405.83 |
| Insurance | |
| Workmen's Comp | 172.00 |
| **Total Insurance** | 172.00 |
| Internet | 638.16 |
| Payroll Expenses | 16,787.96 |
| Payroll Taxes | |
| FICA | 1,040.85 |
| FUTA | 15.20 |
| Medicare | 243.42 |
| SUTA | 39.25 |
| Payroll Taxes - Other | 6,823.86 |
| **Total Payroll Taxes** | 8,162.58 |
| Postage and Delivery | 19.36 |
| Rent | 7,968.00 |
| Repairs | |
| Computer Repairs | 632.80 |
| **Total Repairs** | 632.80 |
| Telephone | 647.03 |
| Utilities | |
| Gas and Electric | 165.45 |
| **Total Utilities** | 165.45 |
| **Total Expense** | 35,986.98 |
| **Net Ordinary Income** | -35,986.98 |
| **Net Income** | **-35,986.98** |

# Amberwood Holdings
## Profit & Loss
### July through September 2024

|  | Jul - Sep 24 |
|---|---|
| **Ordinary Income/Expense** | |
| **Expense** | |
| **Bank Service Charges** | 70.00 |
| **Insurance** | |
| **Life - Glenn** | 9,054.45 |
| **Total Insurance** | 9,054.45 |
| **Total Expense** | 9,124.45 |
| **Net Ordinary Income** | -9,124.45 |
| **Net Income** | **-9,124.45** |

**EXHIBIT C**

**(SFAR and Schedules)**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
Receivership: Civil Court Case No. 1:2019cv05957
**REPORTING PERIOD 07/01/2024 – 09/30/24**

| FUND ACCOUNTING (See Instructions): | | Current Reporting Period 07/01/2024 – 09/30/24 | | | 09/12/19 to 09/30/24 |
|---|---|---|---|---|---|
| | | Detail | Subtotal | Grand Total | Case to Date |
| Line 1 | Beginning Balance (as of 07/01/24) | | | $20,647,845.21 | |
| | *Increases in Fund Balance:* | | | | |
| Line 2 | Business Income | | | | $117,317.98 |
| Line 3 | Cash and Securities | | | | |
| Line 4 | Interest/Dividend Income | $129,930.65 | | $129,930.65 | $1,092,649.96 |
| Line 5 | Business Asset Liquidation | | | | $43,335,661.78 |
| Line 6 | Personal Asset Liquidation | | | | |
| Line 7 | Third-Party Litigation | | | | $562,919.80 |
| Line 8 | Miscellaneous – Other | | | | $438.25 |
| | **Total Funds Available (Lines 1-8):** | | | $20,777,775.86 | $45,108,988.77 |
| Line 9 | *Decreases in Fund Balance:* **Disbursements to Senior Secured Lenders/Investors** | $1,200,979.15 | | $1,200,979.15 | $18,703,850.81 |
| Line 10 | **Disbursements for Receivership Operations** | | | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | $(532.00) | | $(532.00) | $3,687,033.58 |
| Line 10b | *Business Asset Expenses* | $77,334.00 | | $77,334.00 | $2,372,423.21 |
| Line 10c | *Personal Asset Expenses* | | | | 2,134,570.27 |
| Line 10d | *Hospital Settlements & Investment Expenses* | | | | |
| Line 10e | *Third-Party Litigation Expenses* | | | | |
| | 1. Attorney Fees | | | | $35,657.63 |
| | 2. Litigation Expenses | | | | |
| | *Total Third-party Litigation Expenses* | | | | |
| Line 10f | *Tax Administrator Fees and Bonds* | - | | | |
| Line 10g | *Federal and State Tax Payments* | $47,957.86 | | $47,957.86 | $787,316.63 |
| | **Total Disbursements for Receivership Operations** | | - | $ | $27,720,852.14 |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | - | | - | |
| Line 11a | *Distribution Plan Development Expenses:* | - | | | |
| | 1. Fees: | - | | | |
| | Fund Administrator | - | | | |
| | Independent Distribution Consultant (IDC) | - | | | |
| | Distribution Agent | - | | | |
| | Consultants | - | | | |
| | Legal Advisers | - | | | |
| | Tax Advisers | - | | | |
| | 2. Administrative Expenses | - | | | |
| | 3. Miscellaneous | - | | | |
| | *Total Plan Development Expenses* | | | - | |
| Line | *Distribution Plan Implementation* | - | | | |

| | | | | | |
|---|---|---|---|---|---|
| 11b | *Expenses:* | | | | |
| | 1. Fees: | | | | |
| |     Fund Administrator | - | | | |
| |     IDC | - | | | |
| |     Distribution Agent | - | | | |
| |     Consultants | - | | | |
| |     Legal Advisers | - | | | |
| |     Tax Advisers | - | | | |
| | 2. Administrative Expenses | - | | | |
| | 3. Investor Identification: | - | | | |
| |     Notice/Publishing Approved Plan | - | | | |
| |     Claimant Identification | - | | | |
| |     Claims Processing | - | | | |
| |     Web Site Maintenance/Call Center | - | | | |
| | 4. Fund Administrator Bond | - | | | |
| | 5. Miscellaneous | - | | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | - | | | |
| | *Total Plan Implementation Expenses* | | - | | |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | - | - |
| Line 12 | **Disbursements to Court/Other:** | | | - | |
| *Line 12a* | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | - | | | |
| *Line 12b* | *Federal Tax Payments* | - | | | |
| | **Total Disbursements to Court/Other:** | | | - | - |
| | **Total Funds Disbursed (Lines 9-12):** | | | $1,325,739.01 | $25,638,124.21 |
| Line 13 | **Ending Balance (As of 09/30/24):** | | | $19,452,037.15 | $19,452,037.15 |
| Line 14 | **Ending Balance of Fund - Net Assets:** | | | | |
| *Line 14a* | *Cash & Cash Equivalents* | | | $35,409.89 | $35,409.89 |
| *Line 14b* | *Investments* | | | Undetermined-Investigating- | Undetermined-Investigating- |
| *Line 14c* | *Other Assets or Uncleared Funds* | | | | |
| | **Total Ending Balance of Fund - Net Assets** | | | $19,487,447.04 | $19,487,447.04 |

| | OTHER SUPPLEMENTAL INFORMATION: | 07/01/24 | 09/30/24 | | 09/12/19 to 09/30/24 |
|---|---|---|---|---|---|
| | | Detail | Subtotal | Grand Total | Case to Date |
| | *Report of Items NOT To Be Paid by the Fund:* | | | | |
| Line 15 | **Disbursements for Plan Administration Expenses Not Paid by the Fund** | - | - | | - |
| *Line 15* | *Disbursements for Plan Administration Expenses* | - | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | - | | | |
| | 1. Fees: | - | | | |
| |     Fund Administrator | - | | | |
| |     IDC | - | | | |
| |     Distribution Agent | - | | | |
| |     Consultants | - | | | |
| |     Legal Advisers | - | | | |

| | | | | | |
|---|---|---|---|---|---|
| | Tax Advisers | - | | | |
| | 2. Administrative Expenses | - | | | |
| | 3. Miscellaneous | - | | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | | - | |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | - | | | |
| | 1. Fees: | - | | | |
| | Fund Administrator | - | | | |
| | IDC | - | | | |
| | Distribution Agent | - | | | |
| | Consultants | - | | | |
| | Legal Advisers | - | | | |
| | Tax Advisers | - | | | |
| | 2. Administrative Expenses | - | | | |
| | 3. Investor Identification: | - | | | |
| | Notice/Publishing Approved Plan | - | | | |
| | Claimant Identification | - | | | |
| | Claims Processing | - | | | |
| | Web Site Maintenance/Call Center | - | | | |
| | 4. Fund Administrator Bond | - | | | |
| | 5. Miscellaneous | - | | | |
| | 6. FAIR Reporting Expenses | - | | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | | - | |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | - | | | |
| | **Total Disbursements for Plan Administrative Expenses Not Paid by the fund** | | | - | - |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | - | | - | - |
| Line 16a | *Investment Expenses/CRIS Fees* | - | | | |
| Line 16b | *Federal Tax Payments* | - | | | |
| | **Total Disbursements to Court/Other Not Paid by the Fund:** | | | - | - | - |
| **Line 17** | **DC & State Tax Payments** | - | | - | | - |
| **Line 18** | **No. of Claims:** | | | | |
| Line 18a | *# of Claims Received This Reporting Period* | | | | 0- |
| Line 18b | *# of Claims Received Since Inception of Fund* | | | | 0- |
| **Line 19** | **No. of Claimants / Investors:** | | | | |
| Line 19a | *# of Claimants / Investors Paid This Reporting Period* | | 293 | | 293- |
| Line 19b | *# of Claimants / Investors Paid Since Inception of Fund* | | | | 1,163- |

Receiver:

By: _N. Neville Reid_ (signature)

(signature)

N. Neville Reid
_____
(printed name)

Receiver
_____

(title)

Date
:      ___10/25/24___

**Schedule 1.1 - DETAIL OF LINE 1, BEGINNING BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No.  1:2019cv05957**
**REPORTING PERIOD  07/01/24 - 09/30/24**

| Entity | Bank Name | Account Number | As of Date | Balance |
|---|---|---|---|---|
| Amberwood | Axos Bank | ***0153 | 7/1/2024 | $ - |
| Azlan Group, LLC | Axos Bank | ***0161 | 7/1/2024 | $ - |
| Brookstone Investment Group, Ltd | Axos Bank | ***0179 | 7/1/2024 | $ - |
| Cornerstone Limited Partnership | Axos Bank | ***0187 | 7/1/2024 | $ - |
| Eastridge Holdings, Ltd. | Axos Bank | ***0195 | 7/1/2024 | $ - |
| Guardian Investment Group, Ltd. | Axos Bank | ***0203 | 7/1/2024 | $ - |
| Northridge Holdings, Ltd. | Axos Bank | ***0211 | 7/1/2024 | $ - |
| Paragon Group Limited | Axos Bank | ***0229 | 7/1/2024 | $ - |
| Ridgeview Group I | Axos Bank | ***0237 | 7/1/2024 | $ - |
| Southridge Holdings, Ltd. | Axos Bank | ***0245 | 7/1/2024 | $ - |
| Unity Investment Group, Ltd. | Axos Bank | ***0252 | 7/1/2024 | $ - |
| 106 Surrey | Axos Bank | ***0260 | 7/1/2024 | $ - |
| 561 Deere Park | Axos Bank | ***0278 | 7/1/2024 | $ - |
| 610 Lincoln | Axos Bank | ***0286 | 7/1/2024 | $ - |
| Timber Lake Apartments, LLC | Axos Bank | ***0294 | 7/1/2024 | $ - |
| 5097 Elston Limited Partnership | Axos Bank | ***0302 | 7/1/2024 | $ - |
| 5528 Hyde Park Limited Partnership | Axos Bank | ***0310 | 7/1/2024 | $ - |
| 106 Surrey Limited Partnership | Axos Bank | ***0328 | 7/1/2024 | $ - |
| 610 Lincoln Limited Partnership | Axos Bank | ***0336 | 7/1/2024 | $ - |
| G&C Mueller Family Limited Partnership | Axos Bank | ***0344 | 7/1/2024 | $ - |
| 149 Mason Limited Partnership | Axos Bank | ***0351 | 7/1/2024 | $ - |
| Beacon Foundation | Axos Bank | ***0369 | 7/1/2024 | $ - |
| Willow Creek Landscaping LP | Axos Bank | ***0377 | 7/1/2024 | $ - |
| 139 Austin LP | Axos Bank | ***0385 | 7/1/2024 | $ - |
| 149 Mason/Trust #12655 | Axos Bank | ***0393 | 7/1/2024 | $ - |
| Mueller Painting & Decorating | Axos Bank | ***0401 | 7/1/2024 | $ - |
| Ameritrade | Axos Bank | ***0419 | 7/1/2024 | $ - |
| Northridge Holdings Recievership Settlement Fund | Axos Bank | ***0591 | 7/1/2024 | $ 20,647,845.51 |
| | | | | $ 20,647,845.51 |

**Schedule 2.1 to 8.1- LINES 2-8 INCREASES IN FUND BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No.  1:2019cv05957**
**REPORTING PERIOD  07/01/24 - 09/30/24**

**Line 4 - INTEREST/DIVIDEND INCOME**

| Date | Bank Name | Account Name | Account No. | Payor | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| | Axos Bank | Northridge Holdings Receivership Settlement Fund (NHRSF) | 0591 | Axos | Interest | |
| 7/1/2024 | | | | | | $ 42,247.54 |
| 7/31/2024 | Axos Bank | NHRSF | 0591 | Axos | Interest | $ 244.74 |
| 8/1/2024 | Axos Bank | NHRSF | 0591 | Axos | Interest | $ 43,747.11 |
| 9/2/2024 | Axos Bank | NHRSF | 0591 | Axos | Interest | $ 130.02 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 | Axos | Interest | $ 43,527.33 |
| 9/5/2024 | Axos Bank | NHRSF | 0591 | Axos | Interest | $ 33.91 |
| | | | | | | $ 129,930.65 |

**Line 5-BUSINESS ASSET LIQUIDATION**

| Date | Bank Name | Account Name | Account No. | Payor | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| | | | | | | $ - |

**Line 7 - THIRD PARTY LITIGATION**

| Date | Bank Name | Account Name | Account No. | Payor | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| | | | | | | $ - |

Increases in Funds Balance Lines 1-8 $ 129,930.65

**LINE 9- DECREASES IN FUND BALANCE**


**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
Receivership; Civil Court Case No. 1:2019cv05957
REPORTING PERIOD 07/01/24 - 09/30/24


**Line 9 Disbursements to Senior Secured Lenders/Investors**

| Date | Bank Name | Account Name | Account No. | Description | Amount |
|------|-----------|--------------|-------------|-------------|--------|
| | Axos Bank | Northridge Holdings Receivership Settlement Fund (NHRSF) | 0591 | | |
| 8/7/2024 | | | | Interim distribution to Investor 1 | $ 465.66 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 37 | $ 3,834.85 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 49 | $ 142.78 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 50 | $ 13,625.28 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 55 | $ 2,194.92 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 56 | $ 5,039.14 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 56-1 | $ 40.43 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 58 | $ 846.44 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 60 | $ 23,676.94 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 61 | $ 3,958.55 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 71 | $ 336.90 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 72 | $ 3,908.01 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 78 | $ 11,791.41 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 85 | $ 94.33 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 87 | $ 201.28 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 96 | $ 2,829.94 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 105 | $ 572.73 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 107 | $ 673.79 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 109 | $ 269.52 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 111 | $ 842.24 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 112 | $ 5,114.56 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 113 | $ 437.97 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 122 | $ 842.24 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 123 | $ 842.24 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 125 | $ 842.48 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 129 | $ 1,232.86 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 130 | $ 1,684.49 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 131 | $ 8,270.83 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 134 | $ 1,684.49 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 145 | $ 3,267.91 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 147 | $ 5,221.91 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 150 | $ 1,374.15 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 162 | $ 4,546.82 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 172 | $ 505.35 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 180 | $ 336.90 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 184 | $ 8,165.18 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 185 | $ 3,368.97 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 192 | $ 1,684.49 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 193 | $ 5,053.46 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 198 | $ 1,684.49 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 201 | $ 109.78 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 204 | $ 1,710.40 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 205 | $ 673.79 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 214 | $ 1,684.49 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 | Interim distribution to Investor 220 | $ 8,422.44 |

**LINE 9- DECREASES IN FUND BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
Receivership; Civil Court Case No. 1:2019cv05957
REPORTING PERIOD 07/01/24 - 09/30/24

| | | | | | |
|---|---|---|---|---|---|
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 225 | $ | 842.24 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 269 | $ | 694.16 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 271 | $ | 1,010.69 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 295 | $ | 1,684.49 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 300 | $ | 5,053.46 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 302 | $ | 13,066.25 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 308 | $ | 842.24 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 319 | $ | 808.55 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 333 | $ | 1,454.88 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 336 | $ | 881.21 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 337 | $ | 673.79 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 338 | $ | 3,368.97 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 340 | $ | 1,053.66 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 341 | $ | 33.69 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 342 | $ | 336.90 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 345 | $ | 33.69 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 366 | $ | 271.13 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 389 | $ | 2,492.42 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 390 | $ | 3,368.97 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 394 | $ | 1,684.49 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 438 | $ | 1,288.81 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 439 | $ | 168.45 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 445 | $ | 2,358.28 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 452 | $ | 501.97 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 457 | $ | 13,488.07 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 482 | $ | 342.64 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 487 | $ | 1,015.79 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 497 | $ | 4,042.77 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 511 | $ | 657.64 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 536 | $ | 673.79 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 538 | $ | 1,026.53 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 551 | $ | 336.90 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 554 | $ | 4,716.56 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 556 | $ | 2,695.18 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 557 | $ | 4,042.77 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 563 | $ | 2,426.08 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 573 | $ | 336.90 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 576 | $ | 535.45 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 580 | $ | 2,105.61 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 589 | $ | 440.15 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 592 | $ | 6,994.59 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 593 | $ | 2,251.30 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 595 | $ | 10,949.17 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 597 | $ | 5,113.41 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 598 | $ | 2,363.86 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 600 | $ | 1,178.30 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 612 | $ | 2,744.33 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 613 | $ | 6,737.95 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 615 | $ | 3,622.13 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 619 | $ | 3,368.97 |

**LINE 9- DECREASES IN FUND BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
Receivership; Civil Court Case No. 1:2019cv05957
REPORTING PERIOD 07/01/24 - 09/30/24

| | | | | | |
|---|---|---|---|---|---:|
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 620 | $ | 350.37 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 621 | $ | 1,610.98 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 625 | $ | 1,086.47 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 628 | $ | 9,354.07 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 630 | $ | 3,705.87 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 635 | $ | 3,368.97 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 636 | $ | 11,986.03 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 641 | $ | 3,651.53 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 644 | $ | 3,368.97 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 648 | $ | 393.01 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 649 | $ | 393.01 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 652 | $ | 6,737.95 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 655 | $ | 202.14 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 658 | $ | 2,526.73 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 660 | $ | 6,737.95 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 662 | $ | 842.24 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 663 | $ | 842.24 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 664 | $ | 842.24 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 672 | $ | 6,737.95 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 675 | $ | 1,751.87 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 678 | $ | 168.45 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 685 | $ | 1,684.49 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 686 | $ | 1,684.49 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 691 | $ | 505.35 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 698 | $ | 2,897.32 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 700 | $ | 3,368.97 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 702 | $ | 10,106.92 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 711 | $ | 101.07 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 720 | $ | 1,516.04 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 726 | $ | 5,265.71 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 733 | $ | 2,358.28 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 742 | $ | 8,422.44 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 749 | $ | 2,526.73 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 754 | $ | 10.85 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 760 | $ | 1,347.59 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 768 | $ | 2,358.28 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 769 | $ | 1,386.06 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 777 | $ | 258.99 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 779 | $ | 589.57 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 780 | $ | 2,933.31 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 794 | $ | 2,807.70 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 797 | $ | 1,479.76 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 799 | $ | 135.95 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 808 | $ | 1,178.47 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 817 | $ | 310.98 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 818 | $ | 310.98 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 819 | $ | 362.81 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 820 | $ | 1,620.48 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 821 | $ | 1,620.48 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 822 | $ | 1,684.23 |

**LINE 9- DECREASES IN FUND BALANCE**


**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No.  1:2019cv05957**
**REPORTING PERIOD  07/01/24 - 09/30/24**

| | | | | | |
|---|---|---|---|---|---:|
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 823 | $ | 7,411.49 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 825 | $ | 4,638.51 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 827 | $ | 16,844.87 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 829 | $ | 336.90 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 833 | $ | 1,086.47 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 848 | $ | 1,617.11 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 851 | $ | 1,145.45 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 852 | $ | 33.69 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 853 | $ | 1,231.00 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 854 | $ | 2,695.18 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 856 | $ | 300.68 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 862 | $ | 67.38 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 865 | $ | 1,684.49 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 871 | $ | 8,422.44 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 874 | $ | 1,347.59 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 878 | $ | 606.42 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 879 | $ | 5,124.15 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 882 | $ | 640.11 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 892 | $ | 673.79 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 894 | $ | 3,368.97 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 898 | $ | 6,990.19 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 899 | $ | 168.45 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 900 | $ | 5,895.71 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 902 | $ | 1,010.69 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 903 | $ | 909.62 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 904 | $ | 5,558.81 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 907 | $ | 4,211.22 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 912 | $ | 3,368.97 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 920 | $ | 1,886.63 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 921 | $ | 104.80 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 927 | $ | 3,368.97 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 928 | $ | 86.67 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 931 | $ | 86.67 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 932 | $ | 86.67 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 933 | $ | 86.67 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 934 | $ | 86.67 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 940 | $ | 1,298.74 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 941 | $ | 1,298.74 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 943 | $ | 122.13 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 944 | $ | 122.13 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 954 | $ | 34,211.90 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 956 | $ | 3,220.41 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 958 | $ | 2,695.18 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 960 | $ | 208.32 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 961 | $ | 252.67 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 962 | $ | 1,500.88 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 964 | $ | 1,398.12 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 966 | $ | 1,010.69 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 973 | $ | 5,053.46 |
| 8/7/2024 Axos Bank | NHRSF | 0591 Interim distribution to Investor 975 | $ | 99.05 |

**LINE 9- DECREASES IN FUND BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
Receivership; Civil Court Case No. 1:2019cv05957
REPORTING PERIOD 07/01/24 - 09/30/24

| | | | | | |
|---|---|---|---|---|---|
| 8/7/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 980 | $ | 168.45 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 982 | $ | 1,122.88 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 983 | $ | 1,122.88 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 986 | $ | 269.52 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 989 | $ | 2,742.77 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 990 | $ | 2,742.77 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 1001 | $ | 806.03 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 1002 | $ | 806.03 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 1003 | $ | 830.45 |
| 8/7/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 1022 | $ | 842.24 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 57 Beneficiary | $ | 1,840.59 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 57 Beneficiary | $ | 1,227.07 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 634 Beneficiary | $ | 5,630.27 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 634 Beneficiary | $ | 5,630.26 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 715 Beneficiary | $ | 1,684.48 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 715 Beneficiary | $ | 1,684.49 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 727 Beneficiary | $ | 1,718.18 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 727 Beneficiary | $ | 1,667.64 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 727 Beneficiary | $ | 1,667.64 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 875 Beneficiary | $ | 252.68 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 875 Beneficiary | $ | 252.67 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 883 Beneficiary | $ | 501.30 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 883 Beneficiary | $ | 501.30 |
| 8/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 883 Beneficiary | $ | 501.31 |
| 8/15/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 940  Reversal Change o | $ | (1,298.74) |
| 8/15/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 111  Reversal Incorrect | $ | (842.24) |
| 8/15/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 940 | $ | 1,298.74 |
| 8/15/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 111 | $ | 842.24 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 73 | $ | 12,573.80 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 119 | $ | 8,433.70 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 139 | $ | 1,684.49 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 221 | $ | 842.24 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 254 | $ | 3,145.13 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 260 | $ | 269.52 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 265a | $ | 4,695.62 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 393 | $ | 1,684.49 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 484 | $ | 1,941.87 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 608 | $ | 1,347.59 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 653 | $ | 1,910.21 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 668 | $ | 2,412.56 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 669 | $ | 1,380.52 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 676 | $ | 1,841.85 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 684 | $ | 2,695.18 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 743 | $ | 222.85 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 770 | $ | 1,726.12 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 850 | $ | 19,203.16 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 859 | $ | 6,401.05 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 888 | $ | 5,061.86 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 890 | $ | 6,078.30 |
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 923 | $ | 5,390.36 |

**LINE 9- DECREASES IN FUND BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
Receivership; Civil Court Case No. 1:2019cv05957
**REPORTING PERIOD 07/01/24 - 09/30/24**

| Date | Bank | Fund | Description | | Amount |
|------|------|------|-------------|--|-------:|
| 8/23/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 1023 | $ | 1,479.76 |
| 8/24/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 131 Reversal | $ | (8,270.83) |
| 8/26/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investors re IRA | $ | 10,446.88 |
| 8/26/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investors re IRA | $ | 390,047.02 |
| 8/27/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 131 | $ | 8,270.83 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 238 IRA | $ | 5,734.77 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 264 IRA | $ | 1,352.43 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 265 IRA | $ | 1,970.11 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 407 IRA | $ | 5,727.26 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 574 IRA | $ | 3,368.97 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 616 IRA | $ | 1,684.49 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 677 IRA | $ | 1,785.56 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 775 IRA | $ | 839.22 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 793 IRA | $ | 1,684.49 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 801 IRA | $ | 3,700.82 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 802 IRA | $ | 986.89 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 844 IRA | $ | 2,028.12 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 890 IRA | $ | 9,393.44 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 897 IRA | $ | 404.28 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 926 IRA | $ | 6,204.31 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Distribution | $ | 1,315.22 |
| 9/3/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 825 IRA (Assigned) | $ | 471.83 |
| 9/4/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor No. 58 Reversal Mail w | $ | (1,923.78) |
| 9/4/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 72 Reversal Wrong add | $ | (3,908.01) |
| 9/4/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor No. 58 Mail was return | $ | 1,923.78 |
| 9/4/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 72 | $ | 3,908.01 |
| 9/5/2024 | Axos Bank | NHRSF | 0591 Fourth Interim Distribution | $ | 3,565.72 |
| 9/5/2024 | Axos Bank | NHRSF | 0591 Fourth Interim Distribution | $ | 6,541.20 |
| 9/5/2024 | Axos Bank | NHRSF | 0591 Fourth Interim Distribution | $ | 1,684.49 |
| 9/5/2024 | Axos Bank | NHRSF | 0591 Fourth Interim Distribution | $ | 19,556.04 |
| 9/5/2024 | Axos Bank | NHRSF | 0591 Fourth Interim Distribution | $ | 2,149.17 |
| 9/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 87 | $ | 111.95 |
| 9/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 112 | $ | 748.70 |
| 9/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 129 | $ | 1,693.46 |
| 9/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 230 | $ | 2,014.91 |
| 9/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 457 | $ | 57.64 |
| 9/9/2024 | Axos Bank | NHRSF | 0591 Interim Distribution to Investor 596 | $ | 1,409.28 |
| 9/25/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 85 Reversal Reissuing t | $ | (94.33) |
| 9/25/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor 345 Reversal Reissuing | $ | (33.69) |
| 9/25/2024 | Axos Bank | NHRSF | 0591 Third interim distribution to Investor No. 641 | $ | 8,299.17 |
| 9/25/2024 | Axos Bank | NHRSF | 0591 Third interim distribution to Investor No. 85 | $ | 214.40 |
| 9/25/2024 | Axos Bank | NHRSF | 0591 Fourth interim distribution to Investor No. 85 | $ | 94.33 |
| 9/25/2024 | Axos Bank | NHRSF | 0591 Third interim distribution to Investor No. 345 | $ | 76.57 |
| 9/25/2024 | Axos Bank | NHRSF | 0591 Fourth interim distribution to Investor No. 345 | $ | 33.69 |
| 9/26/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor No. 85 Reversal | $ | (214.40) |
| 9/26/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor No. 345 Reversal | $ | (76.57) |
| 9/26/2024 | Axos Bank | NHRSF | 0591 Interim distribution to Investor No. 641 Reversal | $ | (8,299.17) |
| 9/30/2024 | Axos Bank | NHRSF | 0591 Fourth interim distribution to Investor IRA | $ | 38,215.43 |
| | | | | $ | 1,200,988.15 |

**LINES 10-12- DECREASES IN FUND BALANCE**

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No.  1:2019cv05957**
**REPORTING PERIOD   07/01/24 - 09/30/24**

**Line 10a - Disbursements to Receiver or Other Professionals**

| Date | Bank Name | Account Name | Account No. | Payee | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| 8/9/2024 | AXOS Bank | NORTHRIDGE HOLDINGS RECEIVERSHIP SETTLEMENT FUND (NHRSF) | 0591 | Fox Swibel Levin & Carroll | OVERPAYMENT REFUND CLIENT 07183 | |
| | | | | | | $      (532.00) |
| | | | | | | $      (532.00) |

**Line 10b - Disbursements for Receivership Operations**

| Date | Bank Name | Account Name | Account No. | Payee | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| | Axox Bank | NFRST | 0591 | Nothridge Holdings, Ltd | | |
| 7/12/2024 | | | | | To enable payment of property-related expenses Jul-Aug 2024 | $      34,210.00 |
| | Axox Bank | NFRST | 0591 | | Mailing Services - Notice of Fourth Interim Distribution; invoice # 97951 | |
| 7/22/2024 | | | | Chicago Print Plus | | $       4,465.00 |
| | Axox Bank | NFRST | 0591 | | Mailing Services - Notice of Fourth Interim Distribution; invoice # 97951 Reversal | |
| 8/6/2024 | | | | Chicago Print Plus | Negotiated reduction in cost; reissuing check. | $      (4,465.00) |
| | Axox Bank | NFRST | 0591 | | | |
| 8/6/2024 | | | | Chicago Print Plus | Invoice 97984 | $       3,795.00 |
| 8/21/2024 | Axox Bank | NFRST | 0591 | Mountain Plains, LLC | North Dakota Property Survey Inv | $       3,503.00 |
| | Axox Bank | NFRST | 0591 | | Check creation; fourth interim distribution; invoice 342007 | |
| 8/21/2024 | | | | Axos Fiduciary Services | | $         505.00 |
| 9/25/2024 | Axox Bank | NFRST | 0591 | Nothridge Holdings, Ltd | To enable payment of property-re | $      32,160.00 |
| 8/27/2024 | Axox Bank | NFRST | 0591 | Chicago Print Plus | Invoice 98000 | $       3,161.00 |
| | | | | | | $      77,334.00 |

**Line 10g - Disbursements for Federal and State Tax Payments**

| Date | Bank Name | Account Name | Account No. | Payee | Description | Amount |
|------|-----------|--------------|-------------|-------|-------------|--------|
| 9/16/2024 | Axos Bank | NHRSF | 0591 | Illinois Department of Revenue | P.O. 45-0405443; 2023 IL-1065-V Amb | $         551.00 |
| 9/16/2024 | Axos Bank | NHRSF | 0591 | Illinois Department of Revenue | PO E TAX ID: 85-2278810; IL 1120-V; Yе | $      18,893.00 |
| 9/17/2024 | Axos Bank | NHRSF | 0591 | Northridge Holdings, Ltd. | IRS Levy _Overdraft Fee | $       6,948.86 |
| 9/23/2024 | Axos Bank | NHRSF | 0591 | United States Treasury | US TREAS SI Income Tax Payment Transfer | $      21,565.00 |
| 9/23/2024 | Axos Bank | NHRSF | 0591 | United States Treasury | Bank/ABA #: Income Tax Payment Transfer | $      21,565.00 |
| 9/23/2024 | Axos Bank | NFRST | 0591 | United States Treasury | Return of Income Tax Payment Transfer | $     (21,565.00) |
| | | | | | | $      47,957.86 |
| | | | | | Decreases in Funds Balance Lines 9-12 | $   1,325,748.01 |

Schedule 13.1 - DETAIL OF LINE 13, ENDING BALANCE

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis**
**Receivership; Civil Court Case No. 1:2019cv05957**
**REPORTING PERIOD 07/01/24 - 09/30/24**

| Entity | Bank Name | Account Number | As of Date | Balance |
|---|---|---|---|---|
| Amberwood | Axos Bank | ***0153 | 9/30/2024 | $ - |
| Azlan Group, LLC | Axos Bank | ***0161 | 9/30/2024 | $ - |
| Brookstone Investment Group, Ltd | Axos Bank | ***0179 | 9/30/2024 | $ - |
| Cornerstone Limited Partnership | Axos Bank | ***0187 | 9/30/2024 | $ - |
| Eastridge Holdings, Ltd. | Axos Bank | ***0195 | 9/30/2024 | $ - |
| Guardian Investment Group, Ltd. | Axos Bank | ***0203 | 9/30/2024 | $ - |
| Northridge Holdings, Ltd. | Axos Bank | ***0211 | 9/30/2024 | $ - |
| Paragon Group Limited | Axos Bank | ***0229 | 9/30/2024 | $ - |
| Ridgeview Group I | Axos Bank | ***0237 | 9/30/2024 | $ - |
| Southridge Holdings, Ltd. | Axos Bank | ***0245 | 9/30/2024 | $ - |
| Unity Investment Group, Ltd. | Axos Bank | ***0252 | 9/30/2024 | $ - |
| 106 Surrey | Axos Bank | ***0260 | 9/30/2024 | $ - |
| 561 Deere Park | Axos Bank | ***0278 | 9/30/2024 | $ - |
| 610 Lincoln | Axos Bank | ***0286 | 9/30/2024 | $ - |
| Timber Lake Apartments, LLC | Axos Bank | ***0294 | 9/30/2024 | $ - |
| 5097 Elston Limited Partnership | Axos Bank | ***0302 | 9/30/2024 | $ - |
| 5528 Hyde Park Limited Partnership | Axos Bank | ***0310 | 9/30/2024 | $ - |
| 106 Surrey Limited Partnership | Axos Bank | ***0328 | 9/30/2024 | $ - |
| 610 Lincoln Limited Partnership | Axos Bank | ***0336 | 9/30/2024 | $ - |
| G&C Mueller Family Limited Partnership | Axos Bank | ***0344 | 9/30/2024 | $ - |
| 149 Mason Limited Partnership | Axos Bank | ***0351 | 9/30/2024 | $ - |
| Beacon Foundation | Axos Bank | ***0369 | 9/30/2024 | $ - |
| Willow Creek Landscaping LP | Axos Bank | ***0377 | 9/30/2024 | $ - |
| 139 Austin LP | Axos Bank | ***0385 | 9/30/2024 | $ - |
| 149 Mason/Trust #12655 | Axos Bank | ***0393 | 9/30/2024 | $ - |
| Mueller Painting & Decorating | Axos Bank | ***0401 | 9/30/2024 | $ - |
| Ameritrade | Axos Bank | ***0419 | 9/30/2024 | $ - |
| Northridge Holdings Receivership Settlement Fund | Axos Bank | **0591 | 9/30/2024 | $ 19,452,037.15 |
| | | | | $ 19,452,037.15 |

Schedule 14.1-DETAIL LINE 13, 14a,b,c END BALANCE OF FUND-NET ASSETS

STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Northridge Holdings, Ltd. et al - Cash Basis
Receivership; Civil Court Case No.  1:2019cv05957
REPORTING PERIOD   07/01/24 - 09/30/24

**Line 13, 14a - Cash & Cash Equivalents**

|  | Bank | Balance all accounts as of 12/31/23 |
|---|---|---|
| **Line 13** | Axos Bank | $ 19,452,037.15 |
| **Line 14a** | Parkway Bank; First American Bank (operating accounts) | $ 35,409.89 |
| | **Total (including Parkway/FAB operating)** | **$ 19,487,447.04** |

**Line 14b - Investments**

Real Property Assets of Receivership - value still being determined

**Line 14c - Other Assets or Uncleared Funds**

Other Assets of Receivership - Receiver is investigating

| Account Name | Parkway Account/ (First American Bank) | Parkway Account/ (First American Bank) | Axos Account | Axos Balance |
|---|---|---|---|---|
| Amberwood Holdings | *1756 | $ 2,195.21 | *0153 | $ - |
| Timberwood Recreational Center Inc | *1845 | $ - | N/A | $ - |
| 5528 Hyde Park LP | *2221 | $ - | *0310 | $ - |
| 106 Surrey LP N | *2329 | $ - | *0328 | $ - |
| 149 Mason LP N | *2337 | $ - | *0351 | $ - |
| 610 Lincoln LP N | *2345 | $ - | *0336 | $ - |
| 9620 Ivanhoe LP N | *2353 | $ - | N/A | $ - |
| Azlan Group N | *2396 | $ - | *0161 | $ - |
| Beechwood Group I LP N | *2418 | $ - | N/A | $ - |
| Brookstone Inv. Group N | *2426 | $ - | *0179 | $ - |
| Cornerstone LP N | *2434 | $ - | *0187 | $ - |
| Eastridge Holdings Ltd N | *2442 | $ - | *0195 | $ - |
| Guardian Inv. Group N | *2450 | $ - | *0203 | $ - |
| Paragon Group N | *2469 | $ - | *0229 | $ - |
| Ridgeview Group I N | *2477 | $ - | *0237 | $ - |
| Town Square Mgmt. N | *2485 | $ - | N/A | $ - |
| Unity Inv. Group Ltd. N | *2493 | $ - | *0252 | $ - |
| Glen Ellyn Court Condo Assoc N | *2507 | $ - | N/A | $ - |
| 106 Surrey/Trust #14029 N | *2515 | $ - | *0260 | $ - |
| 441-447 N LSD Dr Townhome Assoc N | *2523 | $ - | N/A | $ - |
| 480-486 N LSD Dr Townhome Assoc N | *2531 | $ - | N/A | $ - |
| 5097 Elston LP | *2558 | $ - | *0302 | $ - |
| Timberlake Apartments N | *2604 | $ - | *0294 | $ - |
| 610 Lincoln/Trust #13741 N | *2612 | $ - | *0286 | $ - |
| 561 Deere Park/Trust #14106 N | *2620 | $ - | *0278 | $ - |
| Southridge Holdings LTD I | *2639 | $ - | *0245 | $ - |
| Northridge Holdings LTD N | *2647 | $ 33,214.68 | *0211 | $ - |
| G&C Mueller Family LP | *2353 | $ - | *0344 | $ - |
| Beacon Foundation | *9622 | $ - | *0369 | $ - |
| Willow Creek Landscaping LP | N/A | $ - | *0377 | $ - |
| 139 Austin LP | *2701(FAB) | $ - | *0385 | $ - |
| 149 Mason/Trust #12655 | *7801(FAB) | $ - | *0393 | $ - |
| Mueller Painting & Decorating | *7302(FAB) | $ - | *0401 | $ - |
| Ameritrade | N/A | $ - | *0419 | $ - |
| Northridge Holdings Receivership Settlement Fund | | | *0591 | $ 19,452,037.15 |
| | **Total Parkway Bank/ (First American Bank)** | **$ 35,409.89** | **Total Axos Bank** | **$ 19,452,037.15** |